**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ADRIAN SINGLETON<br>6024 New Forest Court #4<br>Waldorf, MD 20603<br>(Charles County)<br><br>and<br><br>JUSTIN D'HEILLY<br>1938 Munster Avenue<br>St. Paul, MN 55116<br>(Ramsey County),<br><br>individually and as representatives of the classes,<br><br>          Plaintiffs,<br><br>v.<br><br>DOMINO'S PIZZA, LLC<br>30 Frank Lloyd Wright Drive<br>Ann Arbor, MI 48106<br><br>          Defendant. | Case No.:    8:11-cv-01823-DKC |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**</u>

**(ORAL ARGUMENT REQUESTED)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

    I.     Domino's' Use of Consumer Reports for Employment Purposes ......................2

    II.    Statutory and Regulatory Background ..............................................................3

    III.   Domino's' Violations of the FCRA ...................................................................4

    IV.   Evidence of Willfulness .....................................................................................5

STANDARD OF REVIEW ...............................................................................................6

ARGUMENT .....................................................................................................................7

    I.     Plaintiffs have Alleged Violations of the FCRA ..............................................7

          A.    Plaintiffs Properly Allege that Domino's Violated the FCRA by Failing to Provide Them Copies of Their Consumer Reports ....................................8

          B.    Plaintiffs Properly Allege that Domino's Violated the FCRA by Procuring Their Consumer Reports Without Stand-Alone Notice or Consent ............9

               1.    Domino's Unlawfully Included the BIIC in its Employment Application ...............................................................................................9

               2.    Domino's Unlawfully Included a Release and Acknowledgement in the BIIC ......................................................................................11

    II.    Plaintiffs Have Alleged that Domino's' Violations were Willful .....................14

          A.    Plaintiffs are Entitled to Allege Willfulness Generally ............................14

          B.    Plaintiffs also Have Alleged Willfulness Specifically ..............................16

                1.    Willfulness Allegations Relating to Count 1 .................................16

                     a.  Knowledge of Violations .....................................................16

           b.  Repeatedness of Violations .................................................. 17

        2.      Willfulness Allegations Relating to Counts 2 and 3 ..................... 18

    C.     Now is Not the Time to Decide the Merits of Plaintiffs' Willfulness Allegations ................................................................................ 22

III.     Plaintiffs' Claims are Timely ................................................................. 23

CONCLUSION ................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Statutes and Federal Regulations**

15 U.S.C. § 1681b(b)(2)(A) ........................................................................................ *passim*

15 U.S.C. § 1681b(b)(3)(A) ........................................................................................ *passim*

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 6

Fed. R. Civ. P. 9(b) ........................................................................................................... 15

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 7, 21, 22

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................... 6, 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 6, 7, 23

*E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435 (4th Cir. 2011) .......... 7

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) .................................................... 7

*Tremble v. Town & Country Credit Corp.*, No. 05-C-2625, 2006 WL 163140 (N.D. Ill. Jan. 18, 2006) ............................................................................................................................. 9

*E.E.O.C. v. Video Only, Inc.*, No.06-1362, 2008 WL 2433841 (D.Or. June 11, 2008) .......... 10

*Reardon v. Closetmaid Corp.*, No. 08-1730, 2011 WL 1628041 (W.D.Pa. Apr. 27, 2011) .... 10-12

*Burghv. Dayton Racquet Club, Inc.*, 695 F.Supp.2d 689 (S.D. Ohio 2010) ..................... *passim*

*A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, No. AW-10-2352, 2011 WL 2652257 (D.Md. July 7, 2011) .................................................................................................... 15

*Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161 (D. Kan. 2008) ......................... 15

*In re the TJX Companies, Inc.*, No. 07-md-1853-KHV, 2008 WL 2020375 (D. Kan. May 9, 2008) .......................................................................................................................... 15

*Levine v. World Fin. Network Natl. Bank*, 437 F.3d 1118 (11th Cir. 2006) ..................... 16

*Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47 (2007) .................................................. 17, 20, 21, 22

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) .......... 17

*Smith v. HireRight Solutions, Inc.*, 711 F.Supp.2d 426 (E.D. Pa. 2010) .................. 17, 20, 21, 23

*Gillespie v. Equifax Info. Servs., LLC*, No. 05-C-138, 2008 WL 4316950 (N.D. Ill. Sept, 15,

2008) ................................................................................................................................... 19

*Lagrassa v. Jack Gaughen, LLC*, No. 1:09-0770, 2011 WL 1257384

(M.D. Pa. Mar. 11, 2011) ................................................................................................ 20, 22

*Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664226 (D.Md. Apr. 22, 2010) ........... 20

*Coca-Cola Co. v. Atchinson, Topeka, and Santa Fe Ry. Co.*, 608 F.2d 213 (5th Cir. 1979) .......... 21

*Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437 (3rd Cir. 1977) .................................. 21

*Christensen v. Harris County*, 529 U.S. 576 (2000) ................................................................ 21

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944) ...................................................................... 21

*CompUSA, Inc. v. IBM Corp.*, 228 F.Supp.2d 613 (D.Md. 2002) ........................................... 22

*Zaun v. J.S.H. Inc. of Faribault*, No. 10-2190, 2010 WL 3862860 (D.Minn. Sept. 28, 2010) ...... 22

*Edwards v. Toys 'R' Us*, 527 F.Supp.2d 1197 (C.D.Cal. 2007) ............................................. 23

*Romano v. Active Network, Inc.*, No. 09-C-1905, 2009 WL 2916838 (N.D. Ill. Sept. 3, 2009) ... 23

*Thomas v. U.S. Bank, N.A.*, No. 05-1725-MO, 2007 WL 764312 (D.Or. Mar. 8, 2007) ............ 24

## Secondary Sources

FTC STAFF REPORT: 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July

2011) ................................................................................................................................... 21

## INTRODUCTION

Plaintiffs Adrian Singleton and Justin D'Heilly oppose Domino's' motion to dismiss their claims under the Fair Credit Reporting Act ("FCRA" or "Act").  Under the FCRA:

- It is unlawful for an employer to take adverse action against an employee or job applicant based on information contained in their consumer report without first providing them a copy of their report in advance; and

- It is unlawful for an employer to procure a consumer report on an employee or job applicant without first making proper disclosures and obtaining proper authorization in a "stand-alone" format, *i,e,* in a document that is separate from the employment application and does not contain a release or other extraneous language.

Yet, in spite of its knowledge of these requirements, Domino's chose to break the law.  It failed to provide consumer reports to Plaintiffs and other class members prior to taking adverse action against them.  It included its FCRA disclosures in its employment application.  And it muddied its FCRA disclosures by asking employees, in the same document, to release potential claims against the company and to sign a bogus acknowledgement that the document was a "stand-alone customer notification" when it was not.

These violations were reckless.  In three separate advisory opinion letters, the Federal Trade Commission ("FTC") explicitly warned against these exact violations.  *See First Amended Complaint ("FAC"), Exs. 4, 6, 7.*  Moreover, Domino's' own consumer reporting vendor, HireRight, has counseled Domino's and other clients regarding the FCRA requirements at issue in this case.  *Id., Ex. 9.*  Yet, for whatever reason (perhaps because Domino's did not wish to pay to obtain copies of consumer reports for employees, perhaps because it found the requirements of the statute "inconvenient," or perhaps for some other reason), Domino's chose to disregard the rights of its employees and its legal obligations under the FCRA.  Even after this lawsuit was filed, Domino's still has not changed its practices to comply with the requirements of the Act.

Under these circumstances, Domino's hardly can protest that it has been improperly sued for "willful" violations of the FCRA.  Nor is it entitled to an inference at the pleading stage that its violations were a "mistake."  *See Def's Memo at 13*.  Plaintiffs have more than adequately alleged that Domino's conduct was willful, and they are entitled to prove their timely-filed claims, particularly in the absence of <u>any</u> contemporaneous evidence that Domino's actually determined that its conduct was lawful.[1]  Accordingly, Plaintiffs respectfully request that the Court deny Domino's Motion to Dismiss.

## BACKGROUND

### I.    Domino's Use of Consumer Reports for Employment Purposes

Domino's Pizza, LLC ("Domino's") claims to be the "world leader in pizza delivery." *FAC, ¶ 13*.  In connection with its pizza delivery business, Domino's "automatically" conducts background checks on all of its job applicants.  *Id., ¶ 16 & Ex. 1 at 3*.  In addition, Domino's also conducts background checks on existing employees.  *Id., ¶ 16*.

Domino's does not perform these background checks in-house.  *Id., ¶ 17*.  Rather, Domino's relies on outside consumer reporting firms to obtain this information and report it to Domino's.  *Id.*[2]  These reports furnished by outside vendors constitute "consumer reports" for purposes of the FCRA.  *Id.*

---

[1] Domino's does not submit a prior legal opinion letter from its in-house counsel or other allegedly exculpatory evidence in support of its motion, nor would it be appropriate for it to do so at this stage.

[2] In 2008, Domino's hired Taleo Corporation ("Taleo") to assist it with the background check process.  *FAC, ¶ 18 & Ex. 1*.  Taleo provides Domino's with a background check assessment that divides individuals into three color-coded categories – green, yellow, and red.  *Id*.  According to Taleo, "[t]hirteen percent of people applying for jobs are getting 'red' assessments [based on the information in their reports] and are being taken out of consideration for employment."  *Id*.  The consumer report information that is used for purposes of these background checks comes from Taleo's screening partner, HireRight, Inc. ("HireRight").  *See FAC, ¶ 19 & Ex. 2*.

## II.      Statutory and Regulatory Background

While the use of consumer report information for employment purposes is not *per se* unlawful under the FCRA, it is subject to strict disclosure and authorization requirements.  *Id., ¶ 2.*  Specifically, it is unlawful to procure a consumer report for employment purposes, unless:

> (i)      a clear and conspicuous disclosure has been made in writing to the consumer, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes; and

> (ii)     the consumer has authorized the procurement of the report in writing.

*Id., ¶ 21* (citing 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii))).  This is sometimes referred to as the Act's "stand-alone" disclosure and consent requirement.  In addition, the Act requires that any employer intending to take adverse action based on information in a consumer report must first provide a copy of the report to the relevant employee or job applicant, before taking such adverse action.  *Id., ¶ 29* (citing 15 U.S.C. § 1681b(b)(3)(A)(i)).  This is sometimes referred to as the Act's "pre-adverse action" requirement.

These requirements are not only set forth in the Act itself, but also are the subject of longstanding regulatory guidance from the Federal Trade Commission ("FTC").  *See, e.g., FAC, ¶¶ 24, 27, 31 & Exs. 4-7.*  For example, the FTC repeatedly has emphasized the importance of complying with the stand-alone disclosure and consent requirement, cautioning employers that:

- "The disclosure [form] may not be part of an employment application" (*FAC, ¶ 24 & Ex. 4* ); and

- "[T]he form should not include any extraneous information" such as a liability "waiver" (*FAC, ¶ 27 & Ex. 6* ).

Further, the FTC has rejected any excuse for non-compliance with the Act's pre-adverse action requirement, stating that employers must provide affected individuals with a copy of their report, "even where the information contained in the report (such as a criminal record) would

3

automatically disqualify the individual from employment or lead to an adverse employment action." *FAC, ¶ 31 & Ex. 7.*

These advisory opinion letters are published on the FTC's website for the world (including Domino's corporate legal team) to see. *See FAC, Exs. 4, 6, 7.* Moreover, the FTC recently reaffirmed this guidance in its most recent staff report summarizing "40 years of experience with the Fair Credit Reporting Act." *See FAC, Ex. 5.* Yet, Domino's has systematically violated each and every one of these requirements – and continues to violate these requirements – in willful and/or reckless disregard of the rights of its employees and job applicants. *FAC, ¶ 3.*

## III.   Domino's' Violations of the FCRA

These violations are illustrated by the experiences of each of the named Plaintiffs. Specifically, Domino's violated the FCRA by failing to provide Plaintiffs with a copy of their consumer reports prior to taking adverse action against them based on the information contained in their reports. *Id., ¶ 64; see also id.. ¶¶ 30, 40-42, 48-50.* In addition, Domino's violated the FCRA by procuring consumer reports relating to Plaintiffs without first making proper disclosures and obtaining proper authorization in a stand-alone format. *FAC, ¶¶ 70-71, 75-76; see also id., ¶¶ 23, 34, 43, 46, 51.*

Domino's violated the stand-alone disclosure and consent requirement in two ways. First, it purported to include a "Background Investigation Information and Consent" ("BIIC") on the fifth-page of a multi-page job application. *FAC, ¶¶ 23, 25, 69 & Ex. 3.* Second, the BIIC itself does not consist solely of a disclosure and authorization to obtain consumer report information. *FAC, ¶ 26 & Ex. 3 at 5.* In violation of the Act, the BIIC also contains the following purported release of liability and acknowledgement:

4

> I release, without reservation, you and any person or entity which provides information pursuant to this authorization, from any and all liabilities, claims or causes of action in regards to the information obtained from any and all of the above reference [sic] sources used.  I acknowledge that this is a stand-alone customer notification informing me that a report will be requested and that the information obtained shall be used solely for the purpose of evaluating me for employment, promotion, reassignment, or retention as an employee.

*Id.*

## IV.    **Evidence of Willfulness**

These violations were not the result of mere oversight.  Domino's had access to competent counsel, and <u>knew</u> that its conduct was inconsistent with published FTC guidance and the plain language of the FCRA.  *FAC, ¶¶ 65(a)-(b), 71(a)-(b).*  Yet, it voluntarily chose to engage in such conduct despite the obvious legal risks.  *Id., ¶¶ 65(c), 71(c).*

For example, the fact that the BIIC asked employees to acknowledge that "this is a stand-alone customer notification" clearly demonstrates that Domino's was aware of the stand-alone disclosure and consent requirement, and was further aware that there was there was at least a question as to whether the BIIC satisfied this requirement.  *FAC, ¶ 28, n.2 & Ex. 3 at 5.*  Yet, instead of asking the FTC for an advisory opinion on the matter – which Domino's knew would be unfavorable in light of the FTC's prior advisory opinions on the stand-alone disclosure and consent requirement –  it asked its job applicants for a legal opinion and told them what conclusion to reach (if they wanted to get the job).  *Id., Ex. 3 at 5.*

Likewise, Domino's' termination letter to Singleton acknowledged that "you are entitled to disclosure of the information contained in your consumer report[.]"  *Id., Ex. 8.*  However, instead of providing him a copy of his report (which it was required to do by law), Domino's put the onus on him to "contact[] the consumer reporting agency directly."  *Id, ¶ 40 & Ex. 3.*[3]

---

[3] Curiously, the letter also states that "[y]ou previously should have received a copy of your report . . . under the Fair Credit Reporting Act." *Id.*  However, there is not one iota of evidence

Domino's typically does not provide job applicants or employees with copies of their consumer reports when it takes adverse action against them based on the information in such reports.  *FAC, ¶ 30.*  In fact, Plaintiff D'Heilly (who had access to employment screening information from Domino's' screening system as an assistant manager) does not recall any person ever being provided with a copy of their consumer report by Domino's if they were deemed ineligible for employment.  *Id., ¶ 45, 65(g).*  Therefore, it is unsurprising that he also failed to receive a copy of his consumer report upon being terminated from Domino's.  *Id., ¶¶ 48-50.*  Simply put, Domino's' failure to provide these reports was not "accidental," and it has not produced any evidence to the contrary.  *Id., ¶ 65(h).*[4]

## STANDARD OF REVIEW

In order to state a claim, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy this standard, it is not necessary to plead "detailed factual allegations"; all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility standard is not akin to a

---

that Domino's ever provided – or even attempted to provide – Singleton with a copy of his report.  Domino's conspicuously has not produced any prior "version 1" letter to Singleton purporting to enclose a copy of his report.  Nor is there evidence that such a "version 1" letter even exists, much less evidence regarding to whom it was sent.

[4]  A recent study reported that many large employers are "routinely" failing to provide background checks to their employees.  *Id., ¶ 65(h), n. 3 &  Ex.10 at 12.*  Although the study does not identify these employers by name, it indicates that Domino's' consumer reporting partner, HireRight, has been the subject of multiple lawsuits regarding failure to comply with FCRA requirements.  *Id.*  HireRight was the consumer reporting agency for First Transit, Inc. and First Student, Inc., two companies that have entered into a $5.9 million settlement to resolve claims that they failed to provide copies of consumer reports to employees who had adverse action taken against them.  *Id.* (citing http://www.workplaceclassaction.com/First%20transit%20settlement%20agrement.pdf).

"probability requirement." *Id.*  Rather, it merely requires enough factual allegations "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

In evaluating whether this standard has been met, the Court must accept all factual allegations as true, and draw all reasonable inferences in Plaintiffs' favor. *See E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) ("*DuPont*").  A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). Applying this standard, Plaintiffs clearly are entitled to proceed with their well-pled claims.[5]

## ARGUMENT

### I.     Plaintiffs Have Alleged Violations of the FCRA

Plaintiffs have alleged three clear and unambiguous violations of the FCRA.[6]  Domino's does not even contest the first violation (only whether it was willful).  As for the second and third violations, Domino's' arguments are contrary to longstanding regulatory guidance and the weight of relevant case law regarding the stand-alone disclosure and consent requirement.

---

[5] "[A] complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *DuPont*,  637 F.3d at 440 (internal quotation marks omitted).  Domino's does not assert that it lacks notice of Plaintiffs' claims, merely that it disagrees with them.

[6] Paragraphs 4-6 of the FAC allege as follows:

- "Domino's violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiffs and other putative class members based on undisclosed consumer report information, without first providing Plaintiffs and other affected class members with a copy of the pertinent consumer report[.]"
- "Domino's also violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiffs and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute."
- "Domino's violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiffs and other putative class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA."

A.      **Plaintiffs Properly Allege that Domino's Violated the FCRA by Failing to Provide Them Copies of Their Consumer Reports**

Plaintiffs have properly alleged that Domino's violated the FCRA by failing to provide them with copies of their consumer reports prior to terminating their employment based on the information contained in those reports.  The FCRA explicitly provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]"  15 U.S.C. § 1681b(b)(3)(A)(i).  Because Domino's failed to do so, it clearly violated the Act.

Domino's does not even attempt to argue otherwise in its motion papers.[7]  Instead, it argues that its violations of the adverse-action requirement were innocent (addressed *infra* at 14-23), and raises a red herring concerning whether Plaintiffs would have been fired anyway, even if they had received a copy of their consumer reports.  The latter type of "no harm-no foul" argument has been expressly rejected by the FTC:

> Section 604(b) [15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.

*FAC, Ex. 7* (Rosen Advisory Opinion Letter).  Moreover, as Domino's acknowledges, actual damages are not required to recover for willful violations of the Act, such as those alleged here.  *See Def's Memo at 5* ("To survive a motion to dismiss, . . . Plaintiffs wither must allege willfulness (which does not require actual damages) <u>or</u> must allege negligence and actual

---

[7] Conspicuously absent from Domino's' motion papers is any evidence (or even an assertion) that Domino's actually provided Plaintiffs with copies of their consumer reports.  Given the fact that Domino's submitted several exhibits in support of its motion, this omission is glaring. Domino's surely would have sought to introduce such evidence if it existed.

damages[.]") (emphasis added); *accord*, *Tremble v. Town & Country Credit Corp.*, No. 05-C-2625, 2006 WL 163140 (N.D. Ill. Jan. 18, 2006) ("[Plaintiff] is not required to prove recoverable actual damages in order to show a violation of § 1681b or to obtain statutory damages under § 1681n(a)(1)(A).")

B. **Plaintiffs Properly Allege that Domino's Violated the FCRA by Procuring Their Consumer Reports Without Stand-Alone Notice or Consent**

Plaintiffs also have properly alleged that Domino's violated the FCRA by procuring their consumer reports without first making proper disclosures and obtaining valid consents in the stand-alone format required by the Act. As noted above, it is unlawful to procure a consumer report for employment purposes, unless:

(i) a clear and conspicuous disclosure has been made in writing to the consumer, <u>in a document that consists solely of the disclosure</u>, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized the procurement of the report in writing.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (emphasis added). Domino's failed to meet this requirement here, for two reasons.

1. **Domino's Unlawfully Included the BIIC in Its Employment Application**

First, the relevant BIIC disclosure appears on page 5 of Domino's' employment application, and is not a stand-alone document. The inclusion of the BIIC in the employment application is not only contrary to the plain language of the Act; it also flies in the face of longstanding regulatory guidance and judicial case law. Over a decade ago, the FTC squarely addressed this issue in one of its advisory opinions:

[Question] *Section 604(b)(2)(A) of the FCRA [15 U.S.C. § 1681b(b)(2)(A)] seems to require that the consumer disclosure be "in a document that consists solely of the disclosure." With regard to this requirement, is it sufficient that the disclosure be prominently set forth within an application for employment, or must it truly be included on a separate document?*

9

> [Answer] The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application – no matter how "prominently" it appears – is not "in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

*FAC, Ex. 4* (Leathers Advisory Opinion Letter).   Moreover, the FTC recently reaffirmed this guidance in its 2011 Staff Report.  *See FAC, Ex. 5 at 51* ("The disclosure cannot be part of a printed employment application.").

At least two courts have adopted the same reading of the Act.  In *E.E.O.C. v. Video Only, Inc.*, No. 06-1362, 2008 WL 2433841 (D.Or. June 11, 2008) (Richter Decl., Ex. 8), the court ruled that the defendant violated the Act by procuring a consumer report on the plaintiff for employment purposes, where the defendant only "disclosed this possibility as part of its job application[.]"  *Id.* at *11.  Accordingly, the Court granted summary judgment in favor of the plaintiff on his FCRA claim.  *Id.*  ("I grant summary judgment of liability that Video Only violated . . . 15 § 1681b(b)(2)(A)(I).  This section provides that at any time before the report is procured, a disclosure is made in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes. Video Only disclosed this possibility as part of its job application, which is not a document consisting solely of the disclosure.").

In *Reardon v. Closetmaid Corp.*, No. 08-1730, 2011 WL 1628041, at *4 (W.D.Pa. Apr. 27, 2011) (Richter Decl., Ex. 7), the court was presented with a similar claim that "Closetmaid's disclosure forms were not stand alone documents as required by the FCRA[.]"  In that case, the defendant's disclosure and consent form appeared on page 4 of its application for employment. *See Richter Decl., Ex. 1.*  Accordingly, the plaintiff claimed that the defendant violated §

1681b(b)(2)(A)(i) by "[i]ncluding the requisite disclosure form as part of The Application[.]" *Id., Ex. 2, ¶ 30(c).*  Upon reviewing the complaint, the court held that "plaintiff has stated a claim," *Reardon*, 2011 WL 1628041, at *4, and proceeded to certify a class to pursue this claim.

Domino's does not cite any contrary regulatory authority or judicial guidance in its memorandum of law.  Instead, it argues that the BIIC is not really part of the employment application because "the application concludes on page 4[.]"  *Def's Memo at 19.*  However, this argument is at odds with the language of the employment application itself, which says: "To apply, print and fill out pp. 1-5 and bring to your local Domino's Pizza store."  *FAC, Ex. 3 at 1.*  Moreover, if the BIIC really was a stand-alone document, there would have been no need to include any page number on the document (much less number it page 5).

The disclosure and consent form that Domino's has introduced into the record from the *Burghy* case only serves to underscore that it was unlawful for Domino's to include the BIIC on page 5 of its employment application.  The form that the court upheld in *Burghy* expressly states at the top, in bold letters: "**Do not attach this page to Employment Application**[.]"  *Kurtzer-Ellenbogen Decl., Ex. 3* (emphasis in original).  Thus, it is clear from Domino's own exhibits – as well as the authority cited above – that Domino's violated the FCRA by including the BIIC in its employment application.

### 2. Domino's Unlawfully Included a Release and Acknowledgement in the BIIC

Second, even if the Court were to review the BIIC in a vacuum – ignoring the fact that it is improperly included on page 5 of Domino's employment application – the BIIC still would not satisfy the stand-alone disclosure and consent requirement of the FCRA because it includes more than just a FCRA disclosure and consent.  In addition, the BIIC is larded with other

extraneous items, including: (1) a release of claims against Domino's; and (2) a bogus acknowledgement that the BIIC is a "stand-alone customer notification[.]"  *FAC, Ex. 3 at 5.*

The insertion of this release and acknowledgement into the BIIC also is contrary to the plain language of the Act and longstanding regulatory guidance.  In another advisory opinion, the FTC has warned that "the form should not include any extraneous information."  *FAC, Ex. 6* (Hauxwell Advisory Opinion Letter).  In fact, the FTC specifically warned that "[t]he inclusion of such a waiver [of liability] in a disclosure form will violate Section 604(b)(2)(A) of the FCRA [15 U.S.C. §§ 1681b(b)(2)(A)], which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes."  *Id.*[8]

This interpretation of the statute is also supported by case law, contrary to the arguments raised by Domino's in its brief.  In *Reardon* (cited *supra* at 10-11), the defendant's disclosure form provided:

> I hereby release ClosetMaid and its agents, officials, representative, or assigned agencies, including officers, employees, or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release.

*Richter Decl., Ex. 1.*   Based on this language, the plaintiff claimed that the defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by "[u]sing the FCRA disclosure and authorization form to obtain a Release and Waiver Of Rights."  *Id., Ex. 2 at ¶ 30(b).*  As noted above, the court held that the plaintiff stated a claim based on these and other allegations.  *Reardon*, 2011 WL 1628041, at *4.

Moreover, in a separate class action case, two transit companies (First Transit, Inc. and First Student, Inc.) recently entered into a $5.9 million settlement to resolve a similar FCRA claim.  *See FAC, ¶ 65(h), n.3* (*citing* http://www.workplaceclassaction.com/First%20transit%20

---

[8] The FTC once again reaffirmed this guidance in its 2011 Staff Manual.  *See FAC, Ex. 5 at 51.*

settlement%20agrement.pdf).  In that case, "[t]he Plaintiffs . . . argued that the FCRA disclosure

they received from First Student did not consist 'solely' of the disclosure because it required

Plaintiffs to release the background check company . . . from any liability associated with

furnishing the criminal background check reports to First Student."  *Richter Decl., Ex. 3 at 5*.  In

order to resolve these allegations, the "Defendants . . . agreed to revise their disclosure form by

removing the controversial releases of liability previously contained therein."  *Id. at 22-23*.

Further, the defendants agreed to provide monetary relief to certain class members who signed

the old form containing the release of liability, and who were the subject of a consumer report.

*Id. at 16-17*  In approving this settlement, the Court explicitly determined that relief was

appropriate where "the Defendant that procured the consumer report made the disclosure

required by 15 U.S.C. § 1681b(b)(2)(A)(i) using a document that contained a release of liability

or that otherwise did not comply with that provision."  *Richter Decl., Ex. 4 at 2, ¶ 1(b)*.  The fact

that the defendants paid almost $6 million to settle that case, and the court specifically approved

relief based on the "release of liability," further demonstrates that Plaintiffs' claims relating to

Domino's release have merit.

       The lone case cited by Domino's, *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d

689 (S.D.Ohio. 2010), is not to the contrary.  In that case, the plaintiff did <u>not</u> assert that the

defendant's disclosure and consent form violated the FCRA either because it contained a release

or because it was included in the defendant's employment application.  Indeed, the words

"waiver" and "release" appear nowhere in the plaintiff's complaint or memorandum of law in

opposition to summary judgment.  *Richter Decl., Exs. 5-6.* Rather, the plaintiff objected to the

"style of text" (font size and color) and the fact that the disclosure form identified many different

types of information that the defendant could obtain.  *See Burghy*, 695 F. Supp. 2d at 697;

13

*Richter Decl., Ex. 6 at 6-7.*   The claims asserted here are different.   Moreover, *Burghy* is distinguishable for other reasons as well.   First, it was decided on a motion for summary judgment, not on a motion to dismiss.   Second, the plaintiff in *Burghy* failed to prosecute her claims. The only motion to dismiss that was filed was a motion to dismiss for failure to prosecute, not a motion to dismiss for failure to state a claim.

## II.   Plaintiffs Have Alleged that Domino's' Violations Were Willful

Plaintiffs also have alleged that each of the above violations were willful.   *See FAC, ¶¶ 3, 25, 28, 32, 65, 71, 76.*   Although Domino's hotly disputes Plaintiffs' willfulness allegations, the only question for the Court to decide at this stage is whether willfulness has been alleged in the FAC.   It has.   Plaintiffs are entitled to pursue these allegations.

### A.   Plaintiffs Are Entitled to Allege Willfulness Generally

In its memorandum of law, Domino's asserts that (1) "Plaintiffs have not alleged that Domino's willfully failed to provide them with a copy of their background checks"; and (2) "Plaintiffs have not alleged that Domino's willfully violated its disclosure and authorization obligations."   *Def's Memo at 7, 13.*   Nothing could be further from the truth.   Plaintiffs plainly allege that "Domino's has willfully violated these requirements." *FAC, ¶ 3* (emphasis added).   In particular, Plaintiffs allege that:

- "By failing to provide Plaintiffs and other Putative Class members with copies of their consumer reports prior to taking adverse employment action against them based on such reports, Domino's <u>willfully disregarded</u> [applicable] regulatory guidance and the plain language of the statute in violation of 15 U.S.C. §§ 1681b(b)(3)(A)." *FAC, ¶ 32* (emphasis added);

- "By burying its disclosures on the fifth page of a multi-page job application, Domino's <u>willfully disregarded</u> [applicable] case law and regulatory guidance, and <u>willfully violated</u> 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on employees without complying with the disclosure and authorization requirements of the statute." *FAC, ¶ 25* (emphasis added);

14

- By including an extraneous release and acknowledgement in the BIIC, Domino's <u>willfully disregarded</u> [applicable] regulatory guidance, and <u>willfully violated</u> 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on employees without complying with the disclosure and authorization requirements of the statute. *FAC, ¶ 28* (emphasis added).

In addition, Plaintiffs support these willfulness allegations in considerable detail in Paragraphs 65(a)-(h) and 71(a)-(f) of the FAC.

Although Domino's disputes these allegations, it cannot argue that "Plaintiffs have not alleged" willfulness. *See Def's Memo at 7, 13.* Nor can it argue that it is entitled to further detail regarding Plaintiffs' willfulness allegations at this stage of the proceedings. Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged <u>generally</u>." Fed. R. Civ. P. 9(b) (emphasis added); *accord*, *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, No. AW-10-2352, 2011 WL 2652257, at *8 (D.Md. July 7, 2011). In fact, Plaintiffs' willfulness allegations are "typical" of those raised in other FCRA cases:

> Defendants argue that plaintiffs have not alleged willful violations of [FCRA] because mere knowledge of the statute and other retailers' compliance with its terms are not sufficient to show knowing or reckless noncompliance. This argument is unpersuasive. The complaint alleges that defendants recognized their statutory duty to limit the information which appeared on customer receipts, but intentionally ignored that duty and refused to take steps to comply with [FCRA] regulations. The complaint suggests that defendants' noncompliance was the result of more than a mere careless reading of [FCRA]. When taken as true, plaintiffs' allegations state a plausible claim for willful violations of [FCRA]. *See Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1169 (D.Kan.2008) (citing *Safeco Ins. Co.*, 127 S.Ct. at 2208) (reckless disregard of statutory duties renders [FCRA] violation willful). In fact, <u>plaintiffs' allegations are typical of [FCRA] claims, and courts have almost uniformly rejected the argument that such allegations do not sufficiently allege willful violations of the statute.</u>

*In re The TJX Companies, Inc.*, No. 07-md-1853-KHV, 2008 WL 2020375, at *2 (D.Kan. May 9, 2008) (internal footnote omitted).[9] Therefore, Plaintiffs are entitled to pursue their FCRA

---

[9] The FCRA claims at issue in *TJX* were brought under the Fair and Accurate Credit Transactions Act ("FACTA"), which was enacted in 2003 as an amendment to the FCRA. *Id.* at *1.

claims under the applicable notice pleading standard that applies to such claims.  *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1123 (11th Cir. 2006) ("[W]e conclude, under the notice pleading standard, . . . that Levine has stated a claim for a willful violation of FCRA[.]").

### B.      Plaintiffs Also Have Alleged Willfulness Specifically

Even if the Court were to apply a heightened pleading standard to Plaintiffs' willfulness allegations, Plaintiffs have met it.  In Paragraphs 65(a)-(h) and 71(a)-(f) of the FAC, Plaintiffs identify numerous specific facts from which willfulness may be inferred.

### 1.      Willfulness Allegations Relating to Count 1

With respect to Domino's violations of 15 U.S.C. § 1681b(b)(3)(A) (failure to provide consumer reports), Plaintiffs identify a multitude of grounds upon which willfulness may be inferred.  These allegations relate to both (1) the recklessness of the violations, *FAC, ¶¶ 65(a)-(d)*; and (2) the repeatedness of the violations, *FAC, ¶¶ 65(e)-(h)*.

### a.      Knowledge of Violations

Domino's clearly knows that it is obligated to provide employees and job applicants with copies of their consumer reports before taking adverse action against them based on the information contained in such reports.  Indeed, Domino's does not dispute that it has this legal obligation in its motion papers.

Even if it did, Plaintiffs allege that (1) Domino's had access to competent legal advice; (2) Domino's knew or should have known that its conduct was inconsistent with published FTC guidance (*e.g., FAC, Ex. 7*) and the plain language of the statute; and (3) Domino's voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.  *FAC, ¶ 65(a)-(c)*.  These allegations are clearly sufficient to state a claim for a willful violation of the Act.  As Domino's recognizes, a plaintiff may state a claim by

16

showing that the defendant "knowingly or recklessly violated its statutory duty" and "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Def's Memo at 6* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57, 69). This is precisely what Plaintiffs have alleged here. It is not necessary to show that Domino's acted with malice or evil motive. *See Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) ("malice or evil motive need not be found").

### b.      Repeatedness of Violations

Because Domino's knows (and always has known) of its obligation to provide consumer reports under the FCRA, it really is asking this Court to make an unfounded assumption that its violation of this requirement was a mistake. *See Def's Memo at 13* ("Domino's made a ***mistake*** by not providing Plaintiffs with a copy of their background checks") (emphasis in original). However, it is not entitled to such an assumption, and particularly not on a motion to dismiss, where all inferences are to be made in Plaintiffs' favor.

Plaintiffs allege that "Domino's' repeatedly violated [15 U.S.C. § 1681b(b)(3)(A)] and its failure to provide Plaintiffs and other Adverse Action Class Members with copies of their consumer reports was not accidental." *FAC, ¶ 65(h).*[10] Further, Plaintiffs also allege that:

- D'Heilly had access to consumer report information as an assistant manager, but does not recall anyone who was deemed ineligible for employment at his store ever being provided with a copy of their consumer report. *FAC, ¶¶ 45, 65(g)*;

- The Domino's "Case Study" published online by Taleo does not give any indication that consumer reports are provided to employees or prospective employees who are coded "red" and flagged as ineligible for employment. *FAC, ¶ 65(f) & Ex. 1*;

---

[10] A "willful violation of the FCRA  . . . may be evidenced by repeated instances of the same violation." *See Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 437 n.8 (E.D.Pa. 2010).

- Domino's' BIIC does not state that a consumer report automatically will be provided to employees or prospective employees if Domino's intends to take adverse action against them based on information in their report.  *FAC, ¶ 65(e)*;

- Singleton's disclosure form directed him to "contact[] the consumer reporting agency directly" to obtain his report.  *FAC, ¶ 40 & Ex. 8.*

- A recent study reported that many large employers are "routinely" failing to provide background checks to their employees.  *FAC, ¶ 65(h), n. 3 & Ex. 10.*[11]

In light of these allegations – and in the absence of <u>any</u> evidence that Domino's actually provided consumer reports to persons who were denied employment based on such reports – Plaintiffs should be allowed to proceed with their claims.  At a later date, discovery will show whether Domino's really did make an innocent mistake (as it contends) or whether it systematically and repeatedly failed to provide consumer reports to persons who were entitled to them under the Act (as Plaintiffs allege in the FAC).  However, Domino's is not entitled to a free "pass" on these allegations before discovery even begins.

## 2.        Willfulness Allegations Relating to Counts 2 and 3

In support of Plaintiffs' allegation that Domino's willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) (by procuring consumer reports without making proper disclosures or obtaining proper authorizations), the FAC identifies six separate grounds upon which willfulness may be inferred.  *See FAC, ¶¶ 71(a)-(f) & 76.*  The first three grounds are the same as those asserted in Count One:  (1) Domino's had access to competent legal advice; (2) Domino's knew or should have known that its conduct was inconsistent with published FTC guidance (*e.g., Richter Decl., Ex. 4, 6*) and the plain language of the statute; and (3) Domino's voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was

---

[11] It is also noteworthy that Hireright (one of Domino's' consumer reporting vendors) was the consumer reporting agency for First Transit and First Student, who recently entered into a multi-million dollar settlement to resolve claims that they failed to provide copies of consumer reports to employees.  *FAC, ¶ 65(h), n. 3*; *see also supra* at 6, n.4.

merely careless.  These allegations are sufficient to establish willfulness for the same reasons discussed above.

Although Domino's contends that its conduct was "completely proper" (*Def's Memo at 16*), it does not deny that it was aware of the FTC's advisory opinion letters, which state that (1) employers should <u>not</u> include a FCRA disclosure in an employment application, and (2) employers should <u>not</u> include a release in their FCRA disclosures.  *See Richter Decl., Exs. 4, 6.* Further, Domino's does not deny that it acted inconsistently with these advisory opinion letters by including a release in the BIIC and by including the BIIC in its employment application. Rather, Domino's contends that the FTC simply got it wrong, and that Domino's was entitled to interpret the Act in a different manner.

Yet, there is no evidence that it actually did interpret the Act in a different manner.  *See Gillespie v. Equifax Info. Servs. LLC*, No. 05-C-138, 2008 WL 4316950, at *7 (N.D.Ill. Sept. 15, 2008) ("[T]he Court notes that there is another problem with Equifax's attempt to analogize this case to *Safeco* and others holding a company's interpretation of a less-than-clear FCRA provision to be objectively reasonable. The argument assumes that [Defendant] actually adopted a particular construction of section 1681[.] No such evidence appears in the record in this case; Defendant has elected not to offer evidence[.]").  As Plaintiffs note in the FAC, "there is no contemporaneous evidence that [Domino's] determined that its conduct was lawful."  *FAC, ¶ 71(a).*  It has not produced a legal opinion letter blessing its approach, and it has not identified any case or commentary rejecting the FTC's approach.  The fact that it resorts to citing *Burghy* in a blatant effort at post-hoc rationalization only underscores that it had no basis for departing from the FTC's clear guidance.  For one thing, *Burghy* was decided in 2010, well after Domino's drafted the forms that Plaintiffs signed.  For another, *Burghy* does not mention the FTC's opinion

letters and does not address the issues raised in those letters.  Finally, even if Domino's could have gone "back to the future" and examined *Burghy* prior to the time that it adopted its current employment application,[12] it would have found that the disclosure form in *Burghy* stated: "**Do not attach this page to Employment Application**[.]"   *Kurtzer-Ellenbogen Decl., Ex. 3* (emphasis in original).  Therefore, *Burghy* offers no support for Domino's' decision to adopt the approach that it did.  Nor does Domino's identify any other support in its brief.[13]

Quite simply, Domino's either stuck its head in the sand and failed to make any effort to determine whether the BIIC was lawful, or it did analyze the lawfulness of the BIIC and consciously disregarded published FTC guidance without any reason.  Either way, its conduct was reckless, which is sufficient to establish liability for a willful violation of the Act.  *See Safeco*, 551 U.S. at 56-57 (liability for willfully failing to comply with FCRA includes "reckless disregard of statutory duty").   In fact, in another case involving Domino's' own consumer reporting agency, the court analyzed *Safeco*, and held that "[a] defendant's reading of the FCRA will be unreasonable when 'the business subject to the FCRA had the benefit of guidance from … a regulatory agency ... that might have warned it away from the view it took.'"  *HireRight Solutions*, 711 F. Supp. 2d at 434 (quoting *Safeco*, 551 U.S. at 70) (internal brackets omitted); *accord, Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664226, at *3 (D.Md. Apr. 22,

---

[12] Domino's asserts that it published its employment application online in 2011.  *See Defs' Memo at 25*.  This is clearly false, since the website address for its application references a 2007 date.  *See FAC, ¶ 23* (*citing* at http://www.Dominos.com/careers/pdf/APPL01F.application_*2007*.pdf).

[13] This case is not at all like *Lagrassa v. Jack Gaughen, LLC*, No., 1:09-0770, 2011 WL 1257384 (M.D.Pa. Mar. 11. 2011), *aff'd*, 2011 WL 1257371 (M.D.Pa. Mar. 30, 2011).  In *Lagrassa*, "there were procedures in place to ensure FCRA compliance."  *Lagrassa*, 2011 WL 1257384, at *5.  The defendant just lost the paperwork to show that it actually complied.  *Id*. at *4.  Here, by contrast, the procedures that Domino's had in place were <u>non</u>-compliant.  It did not lose the paperwork.  Rather, the paperwork itself was unlawful.

2010) (plaintiff plausibly alleged a willful violation of FACTA where defendant acted contrary to plain language of the statute and FTC guidance). The same logic applies here.

"Although staff opinion letters do not represent the formal policies or views of the Commission and are not binding, they provide important guidance on issues of statutory interpretation." FTC STAFF REPORT: 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011) at 6, available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf. In fact, other courts have recognized that such staff opinion letters are entitled to "great" weight. *See Coca-Cola Co. v. Atchison, Topeka, and Santa Fe Ry. Co.*, 608 F.2d 213, 222-23 (5th Cir. 1979) ("[S]taff opinion letters of an administrative agency interpreting regulations, although less authoritative than regulations or formal decisions, are entitled to be 'weighed carefully' and to 'great deference[.]'"); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 442 n.13 (3d Cir. 1977) ("the staff's opinion letters are entitled to great weight"). Consistent with this case law, the Supreme Court repeatedly has held that "interpretations contained in formats such as opinion letters are 'entitled to respect[.]'" *Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Therefore, Domino's was not free to disregard them.[14]

---

[14] The Supreme Court's holding in *Safeco* is not to the contrary. In that case, the Court expressly stated that "[t]his is not a case in which the business subject to the Act had the benefit of guidance from . . . the Federal Trade Commission (FTC) that might have warned it away from the view it took." *Safeco*, 551 U.S. at 70. Although the Court observed that one staff opinion letter may have touched upon the issues in that case, here Domino's' conduct was clearly inconsistent with three published opinion letters. Further, defendant Safeco at least made an effort to ascertain the lawfulness of its conduct by obtaining a contemporaneous opinion letter on the subject. *Id.* at n.20. Based on this opinion letter, it thought that it was in compliance with the statute. *Id.* at 68. Here, by contrast, "there is no contemporaneous evidence that [Domino's] determined that its conduct was lawful." *FAC, ¶ 71(a).* Finally, it is important note that *Safeco* was decided on a full record in the context of a motion for summary judgment. The Supreme Court did not determine that the plaintiffs failed to state a claim under Rule 12(b)(6). *See HireRight Solutions*, 711 F. Supp. 2d at 435-36 ("Defendant's reliance on *Safeco* is misplaced for

Domino's is unquestionably aware of the stand-alone disclosure and consent requirement. Domino's' own consumer reporting agency has advised that the disclosure and consent form required by the FCRA "must be a stand-alone document[.]" *FAC, ¶ 71(d) & Ex. 9 at 3.* Moreover, Domino's itself referenced the stand-alone document requirement on the BIIC, and improperly asked employees to waive their right to a stand-alone disclosure by acknowledging that the BIIC was "a stand-alone customer notification" when it was not. *Id., ¶ 71(e) & Ex. 3 at 5.* Further, Domino's has been on notice of potential liability for violating this requirement since this suit was filed on July 1, 2011. However, "Domino's has not changed its business practices in response to the filing of this action." *Id., ¶ 71(f).* Domino's continues to insert the BIIC in its employment application, and it continues to include an extraneous release and acknowledgement in the BIIC. *Id.* For these reasons as well, it is clear that Domino's' conduct is willful.

### C. Now Is Not the Time to Decide the Merits of Plaintiffs' Willfulness Allegations

Although Domino's demands still more facts to "back up" Plaintiffs' allegations of willfulness (*Def's Memo at 3*), it is not entitled to anything further at the motion to dismiss stage.[15]  *See CompUSA, Inc. v. IBM Corp.*, 228 F. Supp. 2d 613, 624-25 (D.Md. 2002) ("[B]ecause the motion in the case at bar was brought pursuant to 12(b)(6), Plaintiff is not

---

several reasons. First, in that case, the Supreme Court was operating under a summary judgment standard of review. . . . In this matter, however, the Court is guided by the Rule 12(b)(6) standard of review, meaning that Defendant bears the burden of proving, not simply that its interpretation was plausible, but that Plaintiff could not prevail under any reasonable alternative reading of the Complaint.")

[15] Almost all of the cases cited by Domino's – including *Burghy*, *Lagrassa*, and *Safeco* – were decided on motions for summary judgment, not motions to dismiss. *See Defs' Memo at 6-7.* The one case it cites that was decided on a motion to dismiss is distinguishable on its facts. *See Defs' Memo at 7* (citing *Zaun v. J.S.H. Inc. of Faribault*, No. 10-2190, 2010 WL 3862860, at *2 (D.Minn. Sept. 28, 2010)) ("This case is different from the typical FACTA case . . . because Zaun does not contend that Long John Silver's practice was to print expiration dates on customer receipts. Rather, he contends that the Long John Silver's employee mistakenly handed him the merchant copy of the receipt rather than the customer copy.").

required to forecast evidentiary support for its allegations in order to survive the motion."); *HireRight Solutions*, 711 F. Supp. 2d at 438 ("[Plaintiff's] allegations satisfy the *Twombly/ Iqbal* standards for pleading a willful violation of . . . the Fair Credit Report Act. … While [plaintiff's] allegations would not necessarily withstand summary judgment scrutiny, the Court remains mindful of the fundamental tenet that a plaintiff, having set forth a legally and factually viable cause of action is entitled to the benefits of discovery before being put to his or her proofs.").  In the absence of discovery, Plaintiffs cannot be expected to produce a "smoking gun" internal memo or other similar documentation.  Moreover, even if the parties were at the summary judgment stage (which they are not) and had the benefit of a full record (which they do not), "[w]illfulness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D.Cal. 2007); *accord*, *HireRight Solutions*, 711 F. Supp. 2d at 434 ("Ultimately, whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question."); *Romano v. Active Network, Inc.*, No. 09-C-1905, 2009 WL  2916838, at *3 (N.D.Ill. Sept. 3, 2009) ("The willfulness issue cannot always be resolved at the motion to dismiss stage since it may involve facts beyond the pleadings.").

## III.    Plaintiffs' Claims Are Timely

Domino's is attempting to mislead the Court by arguing that Counts Two and Three are time barred – and it knows it.[16]  These claims are not based on the fact that Plaintiffs filled out the BIIC or Domino's' employment application *per se*.  Rather, the claims are based on the fact that Domino's "procur[ed] consumer reports" on them without satisfying the requirements of the Act.  *See FAC, ¶ 70* ("Domino's violated the FCRA by <u>procuring consumer reports</u> relating to Plaintiffs and other Background Check Class members without first making proper disclosures in

---

[16] If Domino's really believed that Plaintiffs' claims were time barred, it presumably would not have buried this argument at the end of its brief.

the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).") (emphasis added); *Id., ¶ 75* ("Domino's violated the FCRA by <u>procuring consumer reports</u> relating to Plaintiffs and other Background Check Class members without proper authorization.") (emphasis added) (*citing* 15 U.S.C. § 1681b(b)(2)(A)(ii)).[17]   Thus, until Plaintiffs discovered that Domino's had procured these reports, there was no claim to assert and the statute of limitations did not begin to run.  *See Thomas v. U.S. Bank, N.A.*, No. 05-1725-MO, 2007 WL 764312, at *5 (D.Or. Mar. 8, 2007) ("The bank argues that because the [Plaintiffs] knew it was erroneously reporting the Visa account . . . as far back as March 2002, the statute of limitations for raising this issue expired before the bank even received the ACDVs at issue here.  This is in error. The Thomases' suit is necessarily based on the bank's investigation of the ACDVs, and not simply on its reporting of false information. Thus, the 'liability' at issue did not arise, and therefore the two-year time period was not triggered, until the investigations were performed in Fall 2004.") (internal citation omitted); *accord*, *Burghy*, 695 F. Supp. 2d at 703 ("[A]n adverse action occurs when the decision is carried out, when it is communicated or actually takes effect, and an actor has until that time to take the necessary steps to comply with the FCRA's requirements.").

---

[17] The relevant text of the statute provides:

> [A] person may not <u>procure a consumer report</u>, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

Domino's did not procure the consumer reports at issue – and Plaintiffs certainly did not discover that Domino's had procured these reports – until they were terminated on the basis of such reports.  In Singleton's case, that happened on July 9, 2009.  *See FAC, ¶ 39.*  D'Heilly was terminated even later in October of 2009.  *Id., ¶ 47.*  Both of these events took place within two years of the filing of this action on July 1, 2011.  *See ECF No. 1.*  Accordingly, Plaintiffs' claims are not time-barred.[18]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Domino's' motion to dismiss in its entirety.

Respectfully Submitted this 17th day of October, 2011.

s/Kai H. Richter                                  SULLIVAN, TALBOTT & BATT
NICHOLS KASTER, PLLP                   Alane Tempchin, MD Fed. Bar No. 14780
Kai H. Richter, MN Bar No. 0296545*   77 South Washington Street, Suite 304
Rebekah L. Bailey, MN Bar No. *0389599*   Rockville, Maryland 20850
*(Admitted *pro hac vice*)                 Telephone: (301) 340-2450
4600 IDS Center                              Fax: (301) 424-8280
80 South Eighth Street
Minneapolis, MN 55402                     ATTORNEYS FOR PLAINTIFFS
Telephone: (612) 256-3200                AND THE PUTATIVE CLASSES
Fax: (612) 215-6870

---

[18] Domino's' footnote argument regarding D'Heilly's claim in Count One is even more absurd. *See Def's Memo at 25, n.9.* The fact that D'Heilly was not named on the case caption until September 2, 2011 is completely irrelevant because the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class[,]" regardless of whether the case is ultimately certified as a class action. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). Thus, the filing of the <u>original</u> complaint tolled the statute of limitations for D'Heilly and all other class members. *See, e.g., In re Farmers Ins. Co., Inc. FCRA Litigation*, 741 F. Supp.2d 1211, 1219 (W.D.Okla. 2010); *Popoola v. MD-Individual Practice Ass'n*, 230 F.R.D. 424, 430 (D.Md. 2005) (Chasanow, J.) ("This court . . . concludes that the commencement of the original class action . . . tolled the statute of limitations as to all asserted members][.]") (internal quotation marks and citation omitted). In any event, D'Heilly was not terminated until October of 2011, within two years of when the FAC was filed. *FAC, ¶ 47.*