IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADRIAN SINGLETON, et al.                      :

                                      :

    v.                                        :    Civil Action No. DKC 11-1823

                                        :

DOMINO'S PIZZA, LLC                           :

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Fair Credit Reporting Act ("FCRA") is the motion to dismiss filed by Defendant Domino's Pizza, LLC ("Domino's" or "the company"). (ECF No. 22). The issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the company's motion will be denied.

**I.   Background**

    **A.   Factual Background**

Plaintiffs Adrian Singleton and Justin D'Heilly allege the following facts in their first amended class action complaint and documents appended thereto.[1] Domino's conducts background checks on all of its job applicants as part of a "standard

---

[1] When considering the sufficiency of a complaint challenged by a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005); *Bryant v. Wash. Mut. Bank*, 524 F.Supp.2d 753, 757 n.4 (W.D.Va. 2007).

screening process." (ECF No. 19 ¶ 16).[2] In addition, it conducts background checks on existing employees "from time-to-time" during their employment. (*Id.*). Domino's does not perform these background checks in-house; rather, it relies on two external consumer reporting agencies ("CRAs") to run the background checks and report the results directly to the company.

Before requesting that these firms perform background checks, Domino's requires its employees to complete a "Background Investigation Information and Consent" form ("BIIC form"). (*Id.* ¶ 23). The BIIC form is included as "page 5" in the company's application packet. (*Id.;* ECF No. 19, at 35). The first two paragraphs on the form state, in relevant part:

> I understand that you intend to make an independent investigation of my background which may include references, character, past employment, education, credit and consumer information, driving history, criminal or police records, or insurance claims records . . . for the purpose of confirming the information contained on my application and/or obtaining other information that may be material to my

---

[2] On the docket, the amended class action complaint and its supporting exhibits are not filed separately. That is, all of the pages within that filing are marked as "Document 19," and are numbered sequentially from page one to page ninety-nine. In this memorandum opinion, when referencing information within the complaint, the citation will include the document and paragraph number. When referencing information within the exhibits, the citation will include the document and page number provided by the ECF system.

> qualifications for employment (*a background investigation*).
>
> CONSENT.  I hereby authorize you, as part of the application process, and from time to time during my employment, to the extent permitted by applicable law, to conduct a Background Investigation. . . .  I authorize the release of such information to you.

(ECF No. 19, at 35).  The BIIC form also contains the following paragraph, which precedes the employee's signature authorizing Domino's to perform the background check:

> I release, without reservation, you and any person or entity which provides information pursuant to this authorization, from any and all liabilities, claims or causes of action in regards to the information obtained from any and all of the above reference sources used.  I acknowledge that this is a stand-alone consumer notification informing me that a report will be requested and that the information obtained shall be used solely for the purpose of evaluating me for employment, promotion, reassignment, or retention as an employee.

(*Id.*).

In December 2008, D'Heilly applied to work as a delivery driver in one of the company's Minnesota stores.[3]  Prior to beginning work, he completed the "standard" application packet, which included the BIIC form.  (ECF No. 19 ¶ 34).  D'Heilly

---

[3] D'Heilly had previously worked in the same store for more than three years.  He began as a delivery driver in November 2004 and ultimately obtained a position as assistant manager. D'Heilly left this position in March 2008 to pursue another employment opportunity.

3

worked for Domino's without incident through August 2009.   In September 2009, however, the store stopped scheduling him for work, and D'Heilly's employment was terminated the following month.   At that time, D'Heilly's general manager advised him that he could no longer work as a delivery driver "because something had come up on a background check relating to his motor vehicle history." (*Id.* ¶ 48).   D'Heilly received no additional information regarding his termination, and Domino's never provided him with a copy of the background check.[4]

Singleton, like D'Heilly, applied to work as a delivery driver at one of the company's Maryland stores during the spring of 2009.   He, too, completed the "standard" application packet, including the BIIC form.   (*Id.* ¶ 34).   Singleton then began work.   Several weeks into his employment, and just following the July 4, 2009, holiday, Singleton learned that a "potential issue" had arisen with his employment application and that he had not been scheduled to work any additional hours.   (*Id.* ¶ 28).   In an attempt to resolve the unspecified issue, Singleton submitted a second employment application, but he did not receive any work.

---

[4] D'Heilly later learned, after contacting the local police department on his own initiative, that his driving record listed two speeding tickets.

Instead, several days later, Singleton received a letter dated July 9, 2009, from Domino's entitled "FCRA Letter 2." (ECF No. 19, at 50).  The letter stated, in relevant part:

> As part of our employment selection process, we require that a consumer report be obtained before employment commences to any applicant being considered for the position for which you applied.  You previously should have received a copy of your consumer report. . . .  This is to advise you that our offer of employment is being withdrawn and your application for employment is being denied.  In evaluating your application, the consumer reporting agency listed below provided us with . . . information which, in whole or in part, influenced our employment decision.  Under the Fair Credit Reporting Act, you are entitled to disclosure of the information contained in your consumer report by contacting the consumer reporting agency directly, within sixty (60) days of this letter.  You also have the right to dispute the completeness or accuracy of the report.

(*Id.*).  Contrary to the assertion in the letter, Singleton had not previously received a copy of the referenced report, and Domino's never provided him with this information.

**B.   Procedural Background**

On July 1, 2011, Singleton filed a class action complaint against Domino's alleging multiple violations of the FCRA. Domino's subsequently moved to dismiss for failure to state a claim.  Singleton and D'Heilly responded by filing an amended class action complaint on September 2, 2011.  The amended complaint alleges that Domino's systematically and willfully

violated the FCRA in three ways: (1) by failing to provide employees with copies of their background investigations prior to taking adverse action against them, in violation of 15 U.S.C. § 1681b(b)(3)(A); (2) by using a BIIC form that did not comply with the disclosure requirements set forth in 15 U.S.C. § 1681b(b)(2)(A)(i); and (3) by using a BIIC form that did not comply with the authorization requirements set forth in 15 U.S.C. § 1681b(b)(2)(A)(ii).[5]  On September 26, 2011, Domino's moved to dismiss the amended complaint for failure to state a claim.[6]  Plaintiffs have opposed this motion in its entirety.

---

[5] Subsections 1681b(b)(2)(A)(i)-(ii) provide as follows:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

[6] The company's initial motion to dismiss was denied as moot following the filing of the amended class action complaint. (ECF No. 21).

## II.  Standard of Review

The  purpose  of  a  motion  to  dismiss  pursuant  to  Rule
12(b)(6)  is  to  test  the  sufficiency  of  the  complaint.  *Presley
v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A
plaintiff's  complaint  need  only  satisfy  the  standard  of  Rule
8(a),  which  requires  a  "short  and  plain  statement  of  the  claim
showing  that  the  pleader  is  entitled  to  relief."  Fed.R.Civ.P.
8(a)(2).  "Rule  8(a)(2)  still  requires  a  'showing,'  rather  than
a  blanket  assertion,  of  entitlement  to  relief."  *Bell Atl. Corp.
v. Twombly*,  550  U.S.  544,  555 n.3  (2007).  That  showing  must
consist  of  more  than  "a  formulaic  recitation  of  the  elements  of
a  cause  of  action"  or  "naked  assertion[s]  devoid  of  further
factual  enhancement."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949
(2009) (internal citations omitted).

At  this  stage,  the  court  must  consider  all  well-pleaded
allegations  in  a  complaint  as  true,  *Albright v. Oliver*, 510 U.S.
266,  268  (1994),  and  must  construe  all  factual  allegations  in
the  light  most  favorable  to  the  plaintiff,  *see Harrison v.
Westinghouse Savannah River Co.*,  176  F.3d  776,  783  (4th  Cir.
1999)  (citing  *Mylan Labs., Inc. v. Matkari*,  7 F.3d 1130, 1134
(4th  Cir.  1993)).  In  evaluating  the  complaint,  the  court  need
not  accept  unsupported  legal  allegations.  *Revene v. Charles
Cnty. Comm'rs*,  882  F.2d  870,  873  (4th  Cir.  1989).  Nor  must  it
agree  with  legal  conclusions  couched  as  factual  allegations,

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Additionally, because a motion pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, it is generally inappropriate to address the merits of a party's affirmative defenses in resolving such a motion. *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993); *Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002). Indeed, dismissal pursuant to Rule 12(b)(6) is only proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996), a circumstance that most commonly arises in cases where the statute of limitations has run, 5A Charles A. Wright & Arthur R.

Miller, *Federal Practice & Procedure* § 1357 (1990). If the defense does not "clearly" appear on the face of the complaint, however, a party's motion to dismiss on the basis of that defense must be denied. *Forst*, 4 F.3d at 250 (explaining that such defenses "are more properly reserved for consideration on a motion for summary judgment").

## III. Analysis

Domino's initially asserts, as to all counts, that Plaintiffs have failed to allege adequately that Domino's willfully violated the FCRA, a requirement to recover statutory damages under the FCRA. 15 U.S.C. § 1681n(a)(1)(A). To the extent that this argument is unavailing, Domino's further contends that counts two and three, which address the adequacy of the BIIC form, must be dismissed because: (1) they are time-barred; (2) the BIIC form complies with the FCRA's disclosure and authorization requirements; and (3) even if the BIIC form violates those requirements, Plaintiffs cannot "establish willful misconduct" because the company's interpretation of the FCRA's requirements was "not objectively unreasonable." (ECF No. 22, at 21).[7] Each of these arguments will be addressed in turn.

---

[7] Domino's further asserts that counts two and three are not "plausible on [their] face" because Plaintiffs applied to work for the company in 2008 and 2009, but the application packet

A.    The Amended Complaint Sufficiently Alleges Willfulness

The FCRA permits a plaintiff to recover damages when a defendant acted either negligently or willfully in violating the statute's requirements. *See* 15 U.S.C. § 1681o(a)(1) (providing that a plaintiff may recover actual damages in cases of negligent noncompliance); *id.* § 1681n(a)(1)(A) (providing for statutory damages in cases of willful noncompliance). In the absence of negligent or willful misconduct, however, a plaintiff may not recover at all. *See Safeco Ins. Co. v. Burr*, 551 U.S. 47, 53 (2007). As a result, courts have routinely granted motions to dismiss where a plaintiff alleges neither that the defendant's negligence caused the plaintiff actual damages, nor that the defendant acted willfully. *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803 (7th Cir. 2010) (affirming dismissal where a complaint "alleged no actual injury" and failed to allege adequately that a defendant willfully violated the FCRA), *cert. denied*, 131 S.Ct. 1007 (Jan. 18, 2011) (No. 10-640); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 CV 03760 (GBD), 2011 WL 347222, at *3 (S.D.N.Y. Feb. 1, 2011) (granting a motion to dismiss where the plaintiff "allege[d] no facts that,

---

attached to the complaint lists a copyright date of 2011. (ECF No. 22, at 25). This apparent date discrepancy hardly renders Plaintiffs' claims implausible. Indeed, Plaintiffs expressly allege that they completed the same packet when they joined Domino's in 2008 and 2009, and these allegations must be taken as true at this stage of the proceedings.

if true, would demonstrate that the FCRA was violated willfully or negligently"). In the present case, Plaintiffs do not allege actual injury; rather, they contend that Domino's willfully violated the FCRA and seek only statutory damages. Domino's contends that Plaintiffs' allegations of willfulness are insufficient to survive a motion to dismiss.

In the wake of *Twombly* and *Iqbal*, a mere assertion of willful noncompliance with the FCRA will not, on its own, satisfy Rule 8(a). *See, e.g.*, *Ogbon*, 2011 WL 347222, at *3 (dismissing a complaint asserting FCRA violations where the plaintiff alleged only that "Defendants acted willfully"); *Huggins v. SpaClinic, LLC*, No. 09 C 2677, 2010 WL 963924, at *2 (N.D.Ill. Mar. 11, 2010) (finding the plaintiff's allegation that the defendant "willfully disregarded the mandates of [the Fair and Accurate Credit Transactions Act]" insufficient to survive a motion to dismiss).[8] Thus, to avoid dismissal, plaintiffs asserting that a defendant willfully failed to comply with the FCRA must set forth specific allegations to demonstrate willfulness. *Ogbon*, 2011 WL 347222, at *3.

A defendant acts willfully under the FCRA by either knowingly or recklessly disregarding its statutory duty.

---

[8] In 2003, Congress enacted the Fair and Accurate Credit Transactions Act ("FACTA") as an amendment to the FCRA. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 717 (9th Cir. 2010).

*Safeco*, 551 U.S. at 57-60.[9]  Relying upon this definition, courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless – and, therefore, willful – misconduct.  *See Smith v. HireRight Solutions, Inc.*, 711 F.Supp.2d 426, 435 (E.D.Pa. 2010) (finding that a plaintiff had sufficiently alleged willfulness where the complaint indicated that the defendant had repeatedly engaged in "objectionable conduct" by reporting a single criminal history incident multiple times on a consumer report – an assertion that could, "at minimum, rise to the level of reckless disregard"); *Romano v. Active Network, Inc.*, No. 09 C 1905, 2009 WL 2916838, at *3 (N.D.Ill. Sept. 3, 2009) (citing the plaintiff's assertion that the defendant had repeatedly violated FACTA when concluding that the complaint's allegations of willfulness were sufficient to survive a motion to dismiss).  In addition, assertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal.  *See Kubas v. Standard Parking Corp. IL*, 594 F.Supp.2d 1029, 1031-32 (N.D.Ill. 2009) (denying a motion to dismiss where a plaintiff alleged that a

---

[9]  In *Safeco*, the Supreme Court of the United States explained that a defendant acts recklessly if its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

defendant acted willfully by failing to comply with FACTA after credit card issuers had informed it of the law's requirements); *see also Zaun v. Tuttle, Inc.*, No. 10-2191 (DWF/JJK), 2011 WL 1741912, at *2 (D.Minn. May 4, 2011) (concluding that a plaintiff had sufficiently alleged willfulness by asserting that the defendant was aware of FACTA's requirements, via information provided by a trade association, had the ability to comply with those requirements, and simply decided not to do so).

Here, in each count of the amended complaint, Plaintiffs allege that Domino's acted "willfully" in violating the FCRA, and they support this assertion with allegations analogous to those set forth in the cases above.   With regard to count one, Plaintiffs contend that Domino's engaged in a practice of violating the FCRA by systematically failing to provide employees with copies of background checks prior to taking adverse action against them.   To support this assertion, Plaintiffs emphasize that neither Singleton nor D'Heilly received such copies prior to their termination.   Additionally, Plaintiffs assert that Domino's was aware – through its "general counsel's office and outside employment counsel" – that the FCRA requires employers to provide employees with copies of background checks before taking adverse action against them. (ECF No. 19 ¶ 65).   According to the complaint, Domino's

disregarded the FCRA by "typically" failing to provide employees with copies of their background checks. (*Id.* ¶ 30).

Plaintiffs set forth nearly identical allegations with regard to counts two and three. Specifically, they assert that Domino's repeatedly violated the FCRA by obtaining consumer reports for its employees, such as Singleton and D'Heilly, without providing the prerequisite disclosure and authorization information in a "stand-alone document." (*Id.* ¶ 71). Additionally, Plaintiffs suggest that Domino's, again through its in-house and outside counsel, knew about these requirements, an assertion supported by the company's request that employees certify the BIIC form as a "stand-alone consumer notification." (ECF No. 19, at 35). Yet despite the company's knowledge of the FCRA's disclosure and authorization requirements, Plaintiffs allege that the BIIC form did not actually qualify as a "stand-alone document" because it was part of the company's employment application and contained a liability release. (ECF No. 19 ¶ 71). In light of the case law above, these allegations are sufficient to support Plaintiffs' contention that Domino's willfully violated the FCRA.

Domino's makes two additional arguments in an attempt to avoid this outcome, but both are unavailing. First, the company demands more specificity and support for Plaintiffs' allegations of willfulness, asserting that repeated FCRA violations and

14

knowledge of the FCRA's requirements are insufficient to satisfy Rule 8(a) in the wake of *Twombly* and *Iqbal*.[10]   This argument, however, is based on cases that involved decisions made on motions for summary judgment.   *See, e.g.*, *Lagrassa v. Jack Gaughen, LLC*, No. 1:09-0770, 2011 WL 1257384, at *5 (M.D.Pa. Mar. 11, 2011) (granting a motion for summary judgment where the only evidence offered to support a finding of willfulness was "this single violation of the FCRA, without more"), *judgment adopted by* No. 09-cv-0770, 2011 WL 1257371 (M.D.Pa. Mar. 30, 2011).[11]   On a motion to dismiss, plaintiffs need only provide allegations sufficient to demonstrate entitlement to relief;

---

[10] In a similar vein, Domino's attacks many of the other allegations that Plaintiffs make regarding willfulness, contending that such allegations do not plausibly suggest willful noncompliance with the FCRA.   These arguments need not be addressed in resolving the present motion because the allegations discussed above sufficiently support Plaintiffs' contention that Domino's acted willfully.

[11] Domino's does cite one case involving a motion to dismiss where a court found allegations that a defendant knew of FACTA's requirements, but failed to comply with them, insufficient to demonstrate willfulness.   *See Rosenthal v. Longchamp Coral Gables LLC*, 603 F.Supp.2d 1359, 1361-62 (S.D.Fla. 2009). *Rosenthal*, however, is distinguishable from the present case because the *Rosenthal* court relied heavily on the "Clarification Act," 15 U.S.C. § 1681n(d), in reaching this conclusion. Congress enacted the Clarification Act to make clear that a merchant's failure to comply with certain FACTA requirements shortly after FACTA's enactment could not, on its own, demonstrate willful noncompliance.   In all other non-Clarification Act cases involving allegations that a defendant knew of the FCRA's requirements and failed to comply with them, courts have found such allegations sufficient to infer willfulness at the motion to dismiss stage.

they need not prove their case at such an early stage in the proceedings. *See Smith*, 711 F.Supp.2d at 438 (explaining that, while a plaintiff's assertion of repeated FCRA violations "would not necessarily withstand summary judgment scrutiny, . . . a plaintiff, having set forth a legally and factually viable cause of action is entitled to the benefits of discovery before being put to his or her proofs."); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (reasoning that "a Rule 12(b)(6) motion does not resolve contests surrounding . . . the merits of a claim") (internal quotation marks and brackets omitted).

Domino's further contends that its defenses to Plaintiffs' willfulness allegations are plainly apparent from the documents appended to the complaint. With regard to count one, Domino's asserts that "the only plausible inference" from Singleton's termination letter is that "Domino's made a mistake by not providing Plaintiffs with a copy of their background checks." (*See* ECF No. 22, at 11, 13) (emphasizing that "FCRA Letter 2" stated that "[y]ou previously should have received a copy of your consumer report"). In support of this argument, Domino's cites *Zaun v. J.S.H. Inc.*, a case in which the court granted a defendant's motion to dismiss where the plaintiff made a conclusory allegation of willfulness, but acknowledged in the complaint that the FACTA violation had resulted solely due to

mistake.  No. 10-2190, 2010 WL 3862860, at *2 (D.Minn. Sept. 28, 2010).

Zaun, however, is distinguishable from the present case precisely because Plaintiffs' allegations do not "clearly reveal[]" that the company's failure to provide the background checks was a mistake.  Brooks, 85 F.3d at 181.  Indeed, Plaintiffs have presented several allegations, which were previously discussed, to support the assertion that Domino's acted willfully.  They also emphasize the statement in Singleton's termination letter that directed him to contact the CRA to obtain a copy of his background check, an action that would presumably be unnecessary if Singleton had already received this information.  (ECF No. 19, at 50).  Taken together, and viewing the facts in the light most favorable to Plaintiffs, the parties' conflicting allegations do not "clearly reveal[]" that the failure to provide the background checks was the result of mistake.  Brooks, 85 F.3d at 181.  Rather, resolution of this issue goes to the merits of count one itself and is not properly the subject of a motion to dismiss. McBurney, 616 F.3d at 408.

With regard to counts two and three, Domino's alleges that it engaged in a good-faith effort to comply with the FCRA, as indicated by the BIIC form's assertion that it "is a stand-alone consumer notification."  (ECF No. 19, at 35).  But, once again,

given Plaintiffs' contrary allegations of willfulness, it is too early in the proceedings to make such a determination. *See id.* Plaintiffs' allegations of willfulness are, therefore, sufficient to survive a motion to dismiss.

## B. The Statute of Limitations Does Not Bar Counts Two and Three

The company's remaining arguments focus on dismissal of counts two and three, which address the adequacy of the BIIC form in light of the FCRA's disclosure and authorization requirements. To begin, Domino's contends that these claims must be dismissed as time-barred because Plaintiffs did not file suit within two years of the time they completed the BIIC form.

The FCRA statute of limitations provides that a plaintiff must file suit "not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. The parties agree that the two-year limitations period applies in this case. According to Domino's, however, the complaint reveals that Plaintiffs filed suit outside of the limitations period. Singleton acknowledges that he completed the BIIC form prior to July 1, 2009, more than two years before filing the original class action complaint. D'Heilly similarly acknowledges that he completed the BIIC form

18

before September 2, 2009, more than two years prior to filing the amended class action complaint.[12]   Domino's contends that because counts two and three stem from deficiencies within the BIIC form itself, Plaintiffs were on notice regarding these claims when they completed that form, a time the parties agree is outside the limitations period.   While persuasive at first blush, this argument ultimately fails because it misconstrues the plain language of § 1681b(b)(2).

To be timely, Plaintiffs had to file suit under the FCRA within two years of "the date of discovery . . . *of the violation that is the basis for such liability*."   *Id.* (emphasis added).   The company's limitations argument assumes that the violations in counts two and three occurred when Plaintiffs completed the purportedly deficient BIIC form.   This assumption, however, neglects to consider that the violation was not complete until Domino's – through its external CRAs – actually obtained Plaintiffs' consumer reports.   *See* 15 U.S.C. § 1681b(b)(2) ("[A] person may not procure a consumer report, or cause a consumer report to be procured, . . . unless [it complies with these disclosure and authorization

---

[12] Because this analysis will conclude that counts two and three were timely as to D'Heilly when applying the date of the amended class action complaint, there is no need to determine whether Singleton's filing of the original complaint tolled the statute of limitations as to D'Heilly.

requirements]"); *Davis v. Reg'l Acceptance Corp.*, 300 F.Supp.2d 377, 385 (E.D.Va. 2002) ("[Section] 1681b(b)(2) prohibits any person from obtaining a consumer report . . . without fulfilling enumerated [disclosure and authorization] requirements."). Thus, until these background checks were performed, no violation of § 1681b(b)(2) had occurred. *See* 15 U.S.C. § 1681b(b)(2)(A)(i) (explaining that the employer may provide the requisite disclosures "at any time before the report is procured").

As a result, Plaintiffs could not have discovered the violations underlying counts two and three until they learned that the background checks had taken place. Here, the complaint indicates that Singleton and D'Heilly did not discover this information until after July 1, 2009, and September 2, 2009, respectively, time periods within the statute of limitations. (*See* ECF No. 19 ¶ 39) (indicating that Singleton learned that he was being terminated through a letter dated July 9, 2009); (*id.* ¶¶ 47-48) (noting that D'Heilly learned in October 2009 that his termination resulted from information uncovered during the background check).[13]  Accordingly, contrary to the company's contention, counts two and three are timely.[14]

---

[13] Domino's may also be arguing that Plaintiffs had notice of their second and third claims when they completed the purportedly deficient BIIC form because that form stated that

### C.   Domino's Has Not Shown that, as a Matter of Law, the BIIC Form Complies with the FCRA's Disclosure and Authorization Requirements

Domino's next contends that counts two and three fail to state a claim for relief because the BIIC form complies with the FCRA's disclosure and authorization requirements.  Relying upon

---

Domino's planned to perform a background check.  To the extent Domino's makes such an argument, it is without merit.  Indeed, Congress implicitly rejected this illogical possibility when it amended the FCRA's statute of limitations in 2004.  Prior to that time, the statute of limitations generally required an FCRA action to be brought "within two years from the date on which the liability arises."  15 U.S.C. § 1681p (1970), *amended by* 15 U.S.C. § 1681p (2004).  Pursuant to the amendment, however, Congress changed the limitations period to include a "discovery" period for all FCRA claims.  In so doing, both the House and Senate acknowledged that the amendment served to "extend[] the statute of limitations for violations" of the FCRA beyond "the date on which the violation occurred."  149 Cong. Rec. E2512-02 (daily ed. Nov. 21. 2003) (statement of Rep. Michael G. Oxley) (delivering a conference report regarding numerous FCRA amendments); *see also* Richard Shelby, Amending Fair Credit Reporting Act, S. Rep. No. 108-166, at 17 (2003).  Finding that Plaintiffs were on inquiry notice of counts two and three when they completed the BIIC form, even though no consumer report had yet been obtained, would yield precisely the opposite result.

[14]  Domino's also briefly argues that "[c]ount one is time-barred as to D'Heilly" because "he worked for Domino's through August 2009," but "Domino's had notice of his claim only as of September 2, 2011, more than two years later."  (ECF No. 22, at 25 n.2).  This contention, much like the company's argument as to counts two and three, is fatally flawed.  The complaint indicates that D'Heilly learned only in October 2009, less than two years before the filing of the amended class action complaint, that the company had terminated his employment based on information uncovered during his background check.  D'Heilly thus could not have discovered that the company failed to provide him with a copy of the background check prior to his termination - the violation alleged in count one - until that time.

the statute's plain language and guidance from the Federal Trade Commission ("FTC"),[15] Plaintiffs disagree, alleging that the form is deficient because (1) it is included within the company's application packet, and (2) it contains a liability release. Although the parties devote substantial portions of their argument to the former issue, it need not be addressed in resolving this motion because the latter is dispositive. That is, inclusion of the liability release in the BIIC form precludes Domino's from asserting that, as a matter of law, the BIIC form satisfies the FCRA's requirements.

The parties have not identified, and the court is not aware of, any case law addressing whether an employer may lawfully include a liability release "in the document consist[ing] solely of the disclosure" that informs an employee about procurement of a consumer report for employment purposes.  15 U.S.C. § 1681b(b)(2)(A)(i).[16]  Therefore, it is appropriate to start the

---

[15]  Congress has granted the FTC authority to enforce the FCRA.  15 U.S.C. § 1681s.

[16]  Domino's asserts that *Burghy v. Dayton Racquet Club, Inc.*, 695 F.Supp.2d 689 (S.D.Ohio 2010), which involved a "substantively identical" form, compels the conclusion that the BIIC form is "a document that consists solely of the [required FCRA] disclosure[s]."  (*See* ECF No. 22, at 16-17 (quoting 15 U.S.C. § 1681b(b)(2)(A)(i))).  But this assertion misconstrues the holding in *Burghy*, which principally addressed whether a form provided "clear and conspicuous" disclosure about employee background checks.  *See* 695 F.Supp.2d at 693, 696 ("Thus, the issue the Court must address is whether or not the disclosure was sufficiently conspicuous.").  Indeed, the *Burghy* court

22

analysis of § 1681b(b)(2) from the beginning – with "an examination of the statute's plain text." *See Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010) (internal quotation marks omitted), *cert. denied*, 131 S.Ct. 2969 (June 6, 2011) (No. 10-1229). "In interpreting the plain language of a statute, [courts] give the terms their ordinary, contemporary, [and] common meaning, absent an indication Congress intended [them] to bear some different import." *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011).

Here, dictionary definitions of the word "solely" indicate that a document disclosing that an employer planned to obtain a consumer report would not "consist[] solely of the disclosure"

---

devoted only two paragraphs of its entire opinion to the statute's "consists solely" language, and those paragraphs provide no insight into whether inclusion of a liability release in a disclosure form comports with this requirement. *See id.* at 699-700 (considering whether the combination of disclosure and authorization information into the same document "means that the document does not consist *solely* of the disclosure," and concluding that such combination is permissible based on the plain language of § 1681b(b)(2)(A)(ii)).

Plaintiffs rely on *Reardon v. Closetmaid Corp.* for the proposition that a plaintiff "state[s] a claim" under § 1681b(b)(2) when alleging that a disclosure form contained "more than one disclosure, and more than one release." No. 08-1730, 2011 WL 1628041, at *4 (W.D.Pa. Apr. 27, 2011). This reliance, however, is misplaced for two reasons. First, *Reardon* involved a motion for class certification, rather than a motion to dismiss. Second, the *Reardon* court merely noted, in a cursory fashion, that the "plaintiff ha[d] stated a claim." *Id.* It did not specify which of the plaintiff's numerous allegations led to this conclusion.

if the document also contained a liability release.  15 U.S.C. § 1681b(b)(2)(A)(i).  These definitions define "solely" as, *inter alia*, "to the exclusion of all else." *Merriam Webster Online Dictionary* (2011), *available at* http://www.merriam-webster.com; *see also Oxford English Dictionary Online* (2012) (defining "solely" as "alone" or "without any other as an associate"), *available at* http://www.oed.com; *Webster's Third New Int'l Dictionary of the English Language* 2168 (3[d] ed. 1971) (defining "solely" as "to the exclusion of alternate or competing things").  The BIIC form runs contrary to these definitions because, by containing a liability release, the form includes information that extends beyond the disclosure itself.

Domino's makes only one argument in an effort to avoid the statute's plain language.  According to the company, inclusion of such a release in the disclosure document must be permissible because "the statute itself provides that a consumer authorization may be made on the disclosure document." (ECF No. 22, at 11) (internal quotation marks and brackets omitted).  This contention, however, ignores the significance of congressional silence on an issue where Congress has otherwise spoken.  Indeed, when mandating that an employer use a document that "consists solely of the disclosure," Congress *expressly* permitted employers to include language authorizing the employer to procure the consumer report.  15 U.S.C. § 1681b(b)(2)(A)(ii);

*see also Burghy*, 695 F.Supp.2d at 699.   Had Congress intended for employers to include additional information in these documents, it could easily have included language to that effect in the statute.   It did not do so, however, and its "silence is controlling."   *Cf. Smith v. Under Armour, Inc.*, 593 F.Supp.2d 1281, 1287 (S.D.Fla. 2008) (finding Congress's failure to include language regarding e-commerce in one FCRA section instructive in determining whether that section applied to e-commerce).

In addition to the statutory text, FTC interpretations of § 1681b(b)(2) suggest that inclusion of a liability release in a disclosure form violates the FCRA.[17]   In 1998, in response to company inquiries, the FTC issued two opinion letters addressing § 1681b(b)(2)'s "consists solely" language.   The first letter explicitly states that "inclusion of . . . a waiver [of one's FCRA rights] in a disclosure form will violate" § 1681b(b)(2) because the form will not "consist 'solely' of the disclosure." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998).   The reasoning employed in the second letter supports this conclusion, stating that the FCRA prohibits disclosure forms "encumbered by any other information . . . [in

---

[17] There is no legislative history specifically addressing this FCRA section.

order] to prevent consumers from being distracted by other information side-by-side with the disclosure." Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998). Domino's does not contend that the BIIC form could pass muster under this guidance.

Rather, citing *Safeco*, 551 U.S. 47, Domino's argues that the court should ignore these letters because they are merely advisory opinions. Its argument, however, overstates the Supreme Court's conclusion in *Safeco*. Indeed, while the *Safeco* Court concluded that FTC advisory opinions did not constitute "*authoritative* guidance" on the FCRA, *id.* at 70 & n.19 (emphasis added), numerous courts interpreting the FCRA after *Safeco* have found such opinion letters *persuasive*, *see, e.g.*, *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006). A similar finding is warranted in the present case.

Ultimately, both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document. Because the BIIC form contains such a release, Domino's has not shown, as a matter of law, that the form complies with the FCRA. Its attempt to have counts two and three dismissed on this ground must, therefore, fail.

**D.   Domino's Is Not Entitled to Dismissal of Counts Two and Three on the Ground that Its Interpretation of the FCRA "Was Not Objectively Unreasonable"**

In its final argument, Domino's maintains that, even if the BIIC form did violate the FCRA, its interpretation of the statute's disclosure and authorization requirements "was, at a minimum, not objectively unreasonable." (ECF No. 22, at 21). As with the company's prior argument, because Domino's fails to show that inclusion of the liability release in the BIIC form was "not objectively unreasonable," the reasonableness of including that form within the application packet need not be addressed. (*Id.*).

The Supreme Court has held that a defendant does not willfully violate the FCRA "unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. That is, unless the defendant's interpretation of the statute is objectively unreasonable, a plaintiff will be unable to show that the defendant willfully violated the FCRA. "Where the reading has 'a foundation in the statutory text . . . and a sufficiently convincing justification,'" the interpretation is not objectively unreasonable, even if the reviewing court disagrees with it. *Smith*, 711 F.Supp.2d at 434 (quoting *Safeco*,

551 U.S. at 69).   Domino's clings to this language, asserting that its inclusion of the liability release in the BIIC form resulted from a reasonable reading of § 1681b(b)(2).   The company's reliance on *Safeco*, however, is misplaced for two reasons.

First, the procedural posture of the *Safeco* case differed in a critical manner from the present action.   "[T]he Supreme Court [in *Safeco*] was operating under a summary judgment standard of review.   It found no genuine issue of material fact as to whether the defendant's interpretation of the statute – albeit erroneous – was objectively unreasonable."   *Id.* at 436. In this case, however, a motion to dismiss is pending, and discovery has not yet begun.   Thus, at present, there is no evidence that Domino's actually adopted the interpretation of § 1681b(b)(2) that it proposes here.   *See Gillespie v. Equifax Info. Servs.*, No. 05 C 138, 2008 WL 4316950, at *7 (N.D.Ill. Sept. 15, 2008) (denying a motion for summary judgment where, among other reasons, a defendant had not offered evidence that it "actually adopted a particular construction" of the relevant statutory section).   On similar facts, numerous courts have declined to examine the reasonableness of a defendant's statutory interpretation when ruling on motions to dismiss. *See, e.g., id.* at 436-37; *Korman v. Walking Co.*, 503 F.Supp.2d 755, 761 (E.D.Pa. 2007) (noting that, "at the motion to dismiss

stage, the Court's only role is to determine" whether the complaint sufficiently alleges willfulness (citing *Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1261 (3[d] Cir. 1994))).[18]

Second, even if it were appropriate to reach this issue on a 12(b)(6) motion, Domino's would not prevail. Unlike in *Safeco*, where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning," *Smith*, 711 F.Supp.2d at 436. *See Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1209 (C.D.Cal. 2007) ("This case presents a different situation than *Safeco* because [the FCRA provision at issue] is not ambiguous or susceptible of conflicting interpretations.").[19]

---

[18] Indeed, the few courts that have considered the matter when evaluating a motion to dismiss have offered no justification for doing so. *See, e.g., King v. MovieTickets.com, Inc.*, 555 F.Supp.2d 1339, 1341-42 (S.D.Fla. 2008).

[19] The remaining cases on which Domino's relies in support of this argument are distinguishable for the same reason. *See, e.g., Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-26 (7th Cir. 2008) (concluding that a defendant did not willfully violate the FCRA's "clear and conspicuous" requirement when using six-point font in a disclosure document because, among other things, the meaning of "conspicuous" was "not 'clear'"); *Long v. Tommy Hilfiger U.S.A., Inc.*, No. 09-1701, 2011 WL 635271, at *5-7 (W.D.Pa. Feb. 11, 2011) (finding that statutory ambiguity, along with a "dearth of guidance" from agency or judicial authorities, rendered a defendant's interpretation "objectively reasonable"), *aff'd*, --- F.3d ---, 2012 WL 180874 (3[d] Cir. Jan. 24, 2012).

Domino's has pointed to no authority that would lead to a contrary conclusion.

At bottom, the basis of the company's argument is that "the paucity of [judicial] authority on the [disputed] statutory provision" precludes the conclusion that the company acted in an objectively unreasonable manner.  (ECF No. 24, at 12).[20]  This argument is unpersuasive because it ignores the guidance provided within the statutory provision itself.  Where "the text of [the] statute is clear and open to only one reasonable interpretation . . . a dearth of guidance does not render [a] defendant's readings plausible." *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F.Supp.2d 960, 964 (N.D.Ill. 2007); *Ramirez v. MGM Mirage, Inc.*, 524 F.Supp.2d 1226, 1235 (D.Nev. 2007) (quoting *Follman*, 532 F.Supp.2d at 964).  Because the plain language of § 1681b(b)(2) indicates that inclusion of a liability release in a disclosure form violates the FCRA's disclosure and authorization requirements, Domino's fails to show that its interpretation of this section was "not

---

[20] In its reply, Domino's states that the court in *Reardon* found the same arguments now advanced by Plaintiffs "novel" and "'the legal issue with respect to the requirements of the statute' . . . 'close.'"  (ECF No. 24, at 16 (quoting 2011 WL 1628041, at *7)).  Domino's, however, mischaracterizes the *Reardon* opinion in making this assertion.  The *Reardon* court made these statements with regard to issues unrelated to those disputed here.

objectively unreasonable." (ECF No. 22, at 21). Dismissal of counts two and three on this ground is, therefore, improper.

## IV. Conclusion

For the foregoing reasons, the company's motion to dismiss the amended class action complaint will be denied. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
