**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

---

ADRIAN SINGLETON, et al.                        Case No.: 8:11-cv-01823-DKC

      Plaintiffs,                                **MEMORANDUM OF LAW IN
                                                        SUPPORT OF PLAINTIFFS' UNOPPOSED
vs.                                                     MOTION FOR FINAL APPROVAL OF
                                                        CLASS ACTION SETTLEMENT**

DOMINO'S PIZZA LLC,

      Defendant.

---

# TABLE OF CONTENTS

FACTUAL BACKGROUND .......................................................................................... 1

I.    CASE HISTORY ......................................................................................................... 1

II.   SETTLEMENT OVERVIEW ..................................................................................... 4

III.  DISSEMINATION OF SETTLEMENT NOTICE ...................................................... 6

IV.   CLASS MEMBERS' RESPONSE TO NOTICE ......................................................... 7

V.    SETTLEMENT PROCEEDS DISTRIBUTION METHOD ......................................... 8


ARGUMENT .............................................................................................................................. 9

I.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES ......................... 9

      A.    The Prerequisites of Rule 23(a) Are Met ....................................................... 10

            1.    The Settlement Classes Easily Fulfill the Numerosity Requirement ......... 10

            2.    The Settlement Class Members Share Common Issues of Law and Fact .. 11

            3.    The Class Representatives' Claims Are Typical of the Settlement
                  Classes ............................................................................................... 12

            4.    Class Counsel and the Named Plaintiffs Adequately Represent the
                  Settlement Classes .............................................................................. 12

      B.    The Prerequisites of Rule 23(b) Are Met ...................................................... 13

II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ....................... 14

      A.    The Procedural Requirements of Rule 23(e) Have Been Met ......................... 15

      B.    The Settlement Is Substantively Fair and Adequate ...................................... 16

            1.    The Parties Have Engaged in Thorough Discovery, and the Case is Ripe
                  for Settlement ..................................................................................... 18

2.      Class Counsel Vigorously Represented the Interests of Plaintiffs and

        Engaged in Arms-Length Negotiations to Reach the Instant Settlement ... 19

3.      Class Counsel Has Substantial Experience Litigating Similar Actions and

        Believes the Settlement Constitutes an Excellent Outcome for the

        Settlement Classes .................................................................................... 20

4.      Weighing the Strength of Plaintiffs' Case with the Settlement Terms

        Reveals the Adequacy of the Settlement ................................................... 22

5.      Protracted Litigation Would Be Costly and Harmful to the Settlement

        Classes ....................................................................................................... 25

6.      The Settlement Classes Have Reacted Favorable to the Settlement .......... 26

CONCLUSION .................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................9, 13

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ...........................13

*Anderson v. Signix, Inc.*, No. 3:08-CV-00570, ECF No. 39-1 ................................................24

*Brady v. Thurston Motor Lines*, 726 F. 2d 136 (4th Cir. 1984) ...........................................10

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011) .............................25, 26

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) ...................................................12

*Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) .............................18, 22

*Domonoske v. Bank of Am., N.A.*, 5:08-CV-00066, ECF No. 155 (W.D. Va. Jun. 14, 2011) .......23

*Edelen v. Am. Residential Servs., LLC*, CIV.A. DKC 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013) ...............................................................................................................9, 18

*In re Farmers Insurance Co., Inc.*, 5:03-CV-00158, ECF No. 1011 (W.D. Ok. Sept. 29, 2011) .. 24

*Flinn v. FMC Corp.*, 528 F. 2d 1169 (4th Cir. 1975) ...............................................16, 17, 21

*Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698 (4th Cir. 2011) ......................................13

*Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641 (D. Md. Mar. 23, 2010) ...........................................................................................................14, 15, 17

*In re Jiffy Lube Sec. Litig.*, 927 F. 2d 155 (4th Cir. 1991) ..........................................14, 20, 22, 26

*Kelly v. Norfolk & W. Ry. Co.*, 584 F. 2d 34 (4th Cir. 1978) ...........................................10

*Klingensmith v. Max & Erma's Restaurants, Inc.*, CIV.A. 07-0318, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007) ...........................................................................................................23, 24

*LaValle v. Chexsystems*, No. 8:08-CV-01383, ECF No. 58 (C.D. Cal. Oct. 5, 2011) .................23

*Lomascolo v. Parsons Brinkerhoff, Inc.*, No. 1:08-cv-01310, 2009 WL 304955 (E.D. Va. Sept. 28, 2009) .................................................................................................................................. 15

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ...................... 26

*In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ................... 17, 19

*In re Mid-Atl. Toyota Antitrust Litig.*, 605 F. Supp. 440 (D. Md. 1984) ......................... 26

*Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D.356 (D. Md. 2004) ...................... 13, 14

*Ori v. Fifth Third Bank*, No. 2:08-CV-00432, ECF No. 217 ......................................... 23

*Phillips v. Accredited Home Lenders Holding Co.*, No. 2:06-CV-00057, ECF No. 35-2 (C.D. Cal. July 17, 2008) ......................................................................................................................... 24

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Penn. 2011) ............................. 24

*Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80 (E.D. Pa. 1989) ........................... 26

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010) ................. 23

*In re Serzone Products Liab. Litig.*, 231 F.R.D. 221 (S.D. W. Va. 2005) ..................... 19

*Stanley v. Cent. Garden and Pet Corp.*, 891 F. Supp. 2d 757 (D. Md. 2012) ............ 11, 12

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) .......................... 25, 26

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F. 3d 311 (4th Cir. 2006) ........................... 13

*In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328 (D. Md. 2012) ......................... 10

*In re Tyson Foods, Inc.*, No. CIV.A. RDB-08-1982, 2010 WL 1924012 (D. Md. May 11, 2010) ................................................................................................... 18, 26

*Vaughns v. Bd. of Educ. Of Prince George's Cnty.*, 18 F. Supp. 2d 569 (D. Md. 1998) .. 18, 22, 25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................... 11, 12

<u>Rules and Statutes</u>

15 U.S.C. § 1681, *et seq.* .................................................................................... *passim*

Fed. R. Civ. P. 23, *et seq.*......................................................................................................*passim*

<u>Other Authority</u>

Nicholas M. Pace and William B. Rubenstein, *How Transparent are Class Action Outcomes: Empirical Research on the Availability of Class Action Claims Data¸* (RAND Institute for Civil Justice Working Paper No. WR-599-ICJ, July 2008).................................................................27

Plaintiffs Adrian Singleton and Justin D'Heilly ("Named Plaintiffs"), by and through their counsel, submit this memorandum in support of their Motion for Final Approval of Class Action Settlement.   The proposed Settlement reached by Plaintiffs and Defendant Domino's Pizza, LLC ("Defendant" or "Domino's" and together with Plaintiffs, "the parties") was preliminarily approved by the Court on May 13, 2013.  *ECF No. 69.*  This Settlement is suitable for class adjudication and certification.   Furthermore, the Amended Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), *ECF No. 67-1*, is fair, reasonable, and adequate, providing significant and substantial monetary recovery for each Settlement Class member.  Accordingly, Named Plaintiffs respectfully request that the Court grant final approval of the Settlement.[1]  Defendant does not oppose the relief sought by this Motion.

## FACTUAL BACKGROUND

Plaintiffs provide only a brief overview of the case thus far and hereby incorporate the additional facts contained in the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, *ECF No. 61.*

## I.    CASE HISTORY[2]

Named Plaintiff Adrian Singleton commenced this action on July 1, 2011.  *ECF No. 1.* Justin D'Heilly was later added as a second Named Plaintiff.  *ECF No. 19.*  The First Amended Complaint, *ECF No. 19 ("Complaint")*, alleged Defendant violated the Fair Credit Reporting Act ("FCRA") by burying its "Background Investigation Information and Consent" form

---

[1] Class Counsel has simultaneously filed a separate motion for attorneys' fees, costs, and Named Plaintiff reimbursement awards.  Defendant does not oppose the relief sought by that motion.

[2] Both this Section and Section II are also contained in Plaintiffs' contemporaneously filed Memorandum in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Class Representative Incentive Awards.  If the Court is reviewing the motions contemporaneously, then these sections can be skipped when reviewing this memorandum if the other memorandum has already been reviewed.

("BIIC"), within its multi-page employment application, rather than publishing that form as a stand-alone document, including a purported liability release in the BIIC, which authorized procurement of credit and background reports for employment purposes; and failing to provide applicants or employees with copies of their credit and background reports, in advance of taking adverse employment action in reliance thereon.  *Id.*

This action has been vigorously litigated and the foundation for the claims extensively developed prior to settlement.  After extensive briefing on Defendant's motions to dismiss the Complaint and the Amended Complaint, the latter of which the Court ultimately denied on January 25, 2012, *ECF Nos. 25–26*, Plaintiffs moved to certify the class but sought to forestall briefing on that motion until the completion of discovery.  *ECF No. 27.*  Plaintiffs' counsel proactively sought to protect the then-putative class from being mooted through any effort by Defendant to make offers of judgment pursuant to Rule 68, and briefed both the request to forestall briefing during the pendency of the motion, and also sought a schedule which would protect the putative class from efforts by Defendant to moot claims or pick off class representatives.  *ECF Nos. 27, 28, 37.*

The parties engaged in formal discovery.  Both parties served formal discovery requests, and Defendant answered Plaintiffs' first set of interrogatories and requests for production of documents.  *Drake Decl. ¶ 2.*

The parties then agreed to pursue mediation, and to engage in additional informal discovery in preparation for mediation.  In the course of preparing for mediation, Defendant produced 386 pages of documents, including documents describing Defendant's procedures, its contract materials with HireRight, a sample of pre-adverse action letters from throughout the class period, sample consumer reports, and Defendant's insurance contract and correspondence

2

with its carrier.  This production was followed by production of an additional 226 pages of documents preceded by a second round of discovery requests from Plaintiffs.  The documents included tabular data regarding the number and circumstances of class members, as well as letters from counsel explaining Defendant's case investigation and anticipated testimony of witnesses.  *Id. at ¶ 2.*

Prior to mediation, the parties exchanged lengthy formal mediation briefs setting forth their views on the merits of Plaintiffs' case, including the parties' respective positions on class certification, the merits, and damages.  The parties engaged in a full-day mediation with third party neutral Jerry Roscoe of JAMS on September 24, 2012.  *Id. at ¶¶ 3, 4.*  After mediation, the parties exchanged numerous drafts of both a terms sheet memorializing the parties' agreement and of the formal settlement agreement and associated documents.  *Id. at ¶ 5.*  The parties sought several extensions of the stay to provide ample time to hash out the details of the agreement.  *ECF Nos. 53, 55, 57, 59*; *Drake Decl. ¶ 6*.  After several months of additional arms-length settlement discussions, the parties reached a final settlement agreement.  *ECF No. 67-1.*

On May 13, 2013, after a substantive preliminary approval hearing in which the Court requested that the parties address a variety of important and substantive questions about the Settlement Agreement, *ECF Nos. 62, 69,* the Court granted preliminary approval to the Settlement, conditionally certified three nationwide Settlement Classes, appointed Nichols Kaster, PLLP as Class Counsel, appointed Kurtzman Carson Consultants, LLC ("KCC") as Settlement Administrator, and directed the parties to provide notice to the Settlement Classes.  *ECF No. 69.*  The Court scheduled a final approval hearing for September 23, 2013 at 9:30 a.m., in Courtroom 2-B of the United States District Court for the District of Maryland, Greenbelt Division, 6500 Cherrywood Lane, Greenbelt, Maryland, 20770.

## II.     SETTLEMENT OVERVIEW

The Settlement is memorialized in detail in a formal Settlement Agreement executed by the parties.  *ECF No. 67-1*.  The Settlement establishes three Settlement Classes and creates a common fund of $2.5 million to be distributed *pro rata* (on a per-claim basis) by check to each Settlement Class member who timely files a claim form, with the amount to be received by any given individual to be subject to a per-claim cap.  *ECF No. 67-1 ¶ 21*.  Settlement Class members could make claims in each Settlement Class of which they are a member.  The Settlement Classes include an "Applicant Class" composed of members as to whom Defendant procured or caused to be procured a consumer report on the basis of a consent form containing a liability release executed during the hiring process, between July 1, 2009 and April 30, 2013, inclusive; a "Multiple MVR Check Class" composed of employees for whom, between July 1, 2009 and April 30, 2013, inclusive, Defendant procured or caused to be procured additional consumer reports during their employment with Defendant after such person executed a consent form containing a liability release but before executing a consent form not containing a liability release; and an "Adverse Action Class" consisting of certain Defendant's applicants or employees who, between July 1, 2009 and April 30, 2013, inclusive, were subjected to adverse employment actions based on information contained in their consumer reports, and who did not receive a pre-adverse action notice and/or a copy of the report.  *ECF No. 67-1 ¶ 1*.

Pursuant to the terms of the Settlement, the recovery for each Settlement Class member will be determined *pro rata*, with shares of the Applicant and Adverse Action Classes weighted at 1.25 times the shares of the Multiple MVR Check Class.  *Id. at ¶ 21*; *Settlement Admin. Decl. ¶ 20*.  The *pro rata* distributions are subject to reductions for Court-approved attorneys' fees and expenses, as well as the costs of administration.  Members of the Applicant and Adverse Action

Classes are eligible to receive up to $250 per claim.  *ECF No. 67-1 ¶ 22.*  Members of the Multiple MVR Check Class are eligible to receive up to $200 for each MVR check Defendant performed.  *Id.*  Any unclaimed funds are to be divided between Defendant and the parties' designated *cy pres* recipients.  *Id. at ¶ 28.*

Now that the deadline for claims submissions has passed, it is evident that the entire settlement fund will be distributed to the Settlement Class members, with the only amounts otherwise distributed being those amounts that are associated with checks that are mailed to Settlement Class members who made claims but whose checks are not cashed, plus any nominal amount that cannot be distributed consistent with the formula because doing so would result in fractional cents being added to checks.  *Settlement Admin. Decl. ¶¶ 20, 21.*  Prior to any Court-approved deductions for attorneys' fees, class representative incentive awards or the costs of administration, the *pro rata* distribution based on claims properly made will yield a gross recovery of approximately $204.74 per claim for members of the Applicant and Adverse Action Classes, and approximately $163.79 per Claimable MVR Check performed on members of the Multiple MVR Check Class.[3]  *Settlement Admin. Decl. ¶ 20.*  The average per Settlement Class member recovery will be approximately $370.81.  *Id..*

If the full requested amounts of attorneys' fees, administrative costs, and class representative incentive awards are granted by the Court, the *pro rata* distribution based on claims properly made will yield a recovery of approximately $134.50 per claim for members of

---

[3] The claims period ended in early September (upon the expiration of the seven-day grace period provided for by the Settlement Agreement).  Since that time, the Settlement Administrator has been working to finalize the list of claimants.  In a small number of instances, discrepancies between the information on the claim forms and the information on the class list has required additional research to confirm eligibility to participate in the Settlement.  Class Counsel anticipates that this information will be finalized before the final approval hearing scheduled for September 23, 2013.  On or before that date, Class Counsel intends to submit a revised declaration from the Settlement Administrator explaining any changes to the number of claims deemed eligible and providing revised calculations to the Court.  Class Counsel anticipates that any such changes will be de minimus.  *Drake Decl. ¶ 21.*

the Applicant and Adverse Action Classes, and approximately $107.61 per Claimable MVR Check performed on members of the Multiple MVR Check Class.  *Settlement Admin. Decl. ¶ 21.* The average per Settlement Class member recovery will be approximately $243.61.  *Id. at 21.*

As the overview of the settlement distribution shows, the Settlement achieves an excellent outcome for the Settlement Classes.  Each Settlement Class member who made a claim will receive a check for a sum that exceeds the minimum $100 statutory damages allowed under the FCRA, and the average Settlement Class member will receive a sum which is more than double that amount.  *See* 15 U.S.C. § 1681n(a)(1)(A).  Settlement Class members for whom Defendant procured multiple reports during the course of employment are entitled to a proportionately higher amount of the fund.  Since there is still a dispute between the parties, *inter alia*, over whether Defendant has violated the FCRA, whether any such violations were willful, and whether the claims are susceptible of class treatment outside the settlement context, absent settlement, further litigation would likely be inevitable and would present significant risks and delays to recovery for the Settlement Classes.  Furthermore, given that the Settlement Class members are similarly situated and that claims for statutory damages are ideally suited to uniform distribution among Settlement Class members who have the same kind of claims, the proposed Settlement Classes are optimal candidates for settlement-related certification.  As such, the Court should find the Settlement to be fair, adequate, and appropriate for settlement on a class basis, and should finally approve the Settlement Agreement.

## III.    DISSEMINATION OF SETTLEMENT NOTICE

Following the Court's Order granting preliminary approval, by June 12, 2013, Defendant provided KCC with a list of Settlement Class members based on its records.  *Settlement Admin. Decl. ¶ 4.*  The parties filed a stipulation to edit both the short- and long-form notices on June 24,

2013, *ECF No. 71*, and on the same day the Court approved the revised notices, *ECF No. 72*. KCC mailed the Court-approved class notices ("Notices") by June 27, 2013, with each individual Notice reflecting the particular Settlement Class or Classes of which the addressee was a member. *Settlement Admin. Decl. ¶ 10.* The Notices advised Settlement Class members on the essential details of the Settlement, the postmark deadline for claim forms and opt-outs, the toll-free number of the Settlement Administrator, and the location of a website ("Settlement Website") where Settlement Class members could access the entire Settlement Agreement, FAQ, and relevant court records. *ECF No. 71-1, 71-2.* Any Notices that were returned undeliverable with a forwarding address were promptly re-mailed. *Settlement Admin. Decl. ¶ 11.*

During the course of the claims period, KCC established and maintained the Settlement Website at www.singletonsettlement.com. *Id.* at ¶ 8. In addition, KCC has maintained a toll-free number for Settlement Class members at 1-888-365-3008. *Id.* at ¶ 7. In accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), Defendant has notified the appropriate state and federal officials of the proposed Settlement. *See ECF No. 63.*

## IV.   CLASS MEMBERS' RESPONSE TO NOTICE

The Notices provided Settlement Class members with information about their rights to object to or opt out of the Settlement. *ECF No. 71*, *Exs. A–B*. The Notices informed Settlement Class members of the deadline for mailing claims—August 26, 2013—as well as the deadline for mailing opt-out or exclusion requests—July 27, 2013. The response from the Settlement Classes has been very positive, with 6,742 valid and timely claims received. *Settlement Admin. Decl. ¶ 18.* The Settlement Administrator has had 2,241 phone inquiries from Settlement Class members and the Settlement Website has been visited 12,937 times. *Id.* at ¶¶ *14, 15.* Class Counsel also fielded approximately 53 phone inquiries regarding the Settlement. *Drake Decl. ¶ 8.* Out of

45,668 Settlement Class members who were sent notice, only seven have opted out of the Settlement. *Settlement Admin. Decl. ¶ 16*. Even more telling, not a single Settlement Class member has objected to the terms of the Settlement.

## V.   SETTLEMENT PROCEEDS DISTRIBUTION METHOD

Upon Court approval, the Settlement Agreement shall take effect ten days after the Final Judgment and Order is rendered non-appealable, or, if there is an appeal, 10 days after the ultimate disposition of appeal or of any further proceedings that end in a Final Judgment and Order approving this Settlement. *ECF No. 67-1 ¶ 16*. Within fifteen days thereafter, Defendant will transfer the Settlement Fund to KCC. *Id. at ¶ 21*. Should the Court grant final approval of the Settlement, the entire Settlement Fund of $2,500,000—less payment of administration costs to KCC, Court-approved attorneys' fees and expenses to Class Counsel, Court-approved incentive awards to Named Plaintiffs, and amounts which cannot be disbursed without distributing fractional cents—will be disbursed to the Settlement Classes *pro rata*, payable by check, to Settlement Class members who timely filed claims, according to each member's proportionate share of the fund as laid out in detail in the Settlement Agreement. *Id. at ¶ 21*.

Checks will be issued and postmarked by KCC within thirty days after the Settlement takes effect, and each check shall indicate that it expires 120 days after issuance. *Id. at ¶ 27*. Upon a Settlement Class member's request, KCC shall distribute replacement checks, and any checks that are undeliverable will be re-mailed to the address provided by the U.S. Postal Service, if any. *Id.* Applying the appropriate caps, the claims made should leave only a nominal remaining amount in the fund to be divided between Defendant and the agreed upon *cy pres* recipients. *Id.* at *¶ 28. Settlement Admin. Decl. at ¶¶ 20, 21*. Added to that amount will be funds from checks which are mailed but not cashed, with half reverting to Defendant, and the other half

divided equally between the parties' chosen *cy pres* recipients—the Center for Employment Opportunities and St. Jude Children's Research Hospital. *ECF No. 67-1 at ¶¶ 24, 28*. If any Settlement Class member or Named Plaintiff seeks to enforce the Settlement or dispute its interpretation, the Court will retain jurisdiction to resolve any such matters. *Id. at ¶¶ 12, 15*.

Assuming that all requested deductions for attorneys' fees, costs, incentive awards, and administration costs are granted, the *minimum* value of the check each Settlement Class member will receive will be approximately $107.61. However, many Settlement Class members will receive substantially more; the *average* value of the recovery per Settlement Class member is approximately $243.61. Each of these amounts is *significantly higher* than the statutory minimum damages under the FCRA. All told, this action is ideal for settlement on a class basis, and the Settlement ensures an excellent recovery for the Settlement Classes.

## ARGUMENT

## I.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

The proposed Settlement Classes meet the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and should be certified. Since this motion reaches the Court in the settlement context, the Court need not consider whether the case, if tried, would present management problems, but still must consider the other prerequisites of class certification. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Edelen v. Am. Residential Servs., LLC*, CIV.A. DKC 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013). In this case, an analysis of the remaining factors laid out in Rule 23(a) and 23(b) reveals that the Settlement Classes fulfill the Rule's requirements and should be certified.

### A.  The Prerequisites of Rule 23(a) Are Met

The proposed Settlement Classes fulfill the requirements of Rule 23(a). This Rule instructs that one or more persons may sue as representative parties on behalf of a class as long as: (1) the classes are so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the classes; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the classes; and (4) the representative parties will fairly and adequately protect the interests of the classes. Fed. R. Civ. P. 23(a). These prerequisites are met here.

1.   *The Settlement Classes Easily Fulfill the Numerosity Requirement*

The Settlement Classes at bar are so numerous that joinder would clearly be impracticable. There is no "mechanical test" for numerosity; instead, the Court must resolve the issue of whether joinder is impracticable in light of the unique context of the particular case. *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). In evaluating numerosity, courts may consider "the size of the class . . . and their geographic dispersion." *Id.*

In this case, there are more than 45,000 Settlement Class members. *Settlement Admin. Decl. ¶ 10.* The Settlement Class members are dispersed throughout the country, making joinder particularly difficult. Courts in this Circuit have held that joinder is impracticable where a class includes hundreds of potential claimants, as well as where there are fewer than 100 members. *See, e.g.*, *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984) (certifying class of 74); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012) (certifying class of hundreds). Each of the proposed Settlement Classes contains thousands of members. Thus, the numerosity requirement is easily met.

2.   *The Settlement Class Members Share Common Issues of Law and Fact*

10

There are many common issues of law and fact in this case.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and that their common complaint "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Class members "do not need to share all issues," and the classes may be certified despite factual differences among class members "if the class members share the same legal theory."  *Stanley v. Cent. Garden and Pet Corp.*, 891 F. Supp. 2d 757, 770 (D. Md. 2012).

Here, the claims of Named Plaintiffs Singleton and D'Heilly arose from the same alleged set of facts as those of the absent members of the Settlement Classes.  All Settlement Class members' claims fit neatly within two basic scenarios: (1) the alleged violations of the FCRA associated with Defendant's BIIC, including the presence of a liability release and the placement of the BIIC on the fifth page of a multi-page application, and (2) Defendant's alleged failure to provide appropriate pre-adverse action notice and copies of reports containing adverse information, when it used that information to take adverse employment action against a Settlement Class member.  The Settlement Class members who fall under Scenario 1 have appropriately been divided into two subclasses to account for differing damages due to the fact that some were current employees of Defendant who may have undergone multiple checks of motor vehicle records, some were applicants for whom Defendant procured pre-employment reports, and some were both.  Regardless, all Settlement Class members' claims are premised on (1) whether inclusion of a liability release in the BIIC or burying of the disclosure in a multi-page document violates the FCRA, and/or (2) whether Defendant's alleged systematic failure to provide pre-adverse action notice and copies of reports violated the FCRA.  All of the Settlement

Class members' claims also depend on whether Defendant's violations were "willful" within the meaning of the FCRA.  Settlement Class members within each Class thus share the exact same legal theories, and since the Court can resolve the above-mentioned issues for each Settlement Class "in one stroke," their claims are "capable of classwide resolution," *Dukes*, 131 S. Ct. at 2551.  The proposed Settlement Classes thus present common questions of law and fact and should be certified.

### 3. *The Class Representatives' Claims Are Typical of the Settlement Classes*

The typicality requirement overlaps with commonality, and is met assuming the facts and issues common to the various Settlement Class members are "fairly encompassed by the class representative's claims."  *Stanley*, 891 F. Supp. 2d at 770.  In other words, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members."  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).  The Named Plaintiffs satisfy this requirement.  *See generally, Amended Compl.*, ECF No. 19.

### 4. *Class Counsel and the Named Plaintiffs Adequately Represent the Settlement Classes*

Finally, Class Counsel and the Named Plaintiffs have adequately represented the proposed Settlement Classes.  "[A] plaintiff's interests must not be opposed to those of other class members and the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation."  *Stanley*, 891 F. Supp. 2d at 770.  The interests of the Named Plaintiffs are not opposed to the interests of the absent members of the Settlement Classes, nor is there a conflict of interest among them.  *Singleton Decl. ¶ 3; D'Heilly Decl. ¶ 3*.  The Named Plaintiffs have remained engaged in this litigation and have fulfilled their responsibilities to zealously and adequately represent the Settlement Classes.  *Drake Decl. ¶ 18*.  Moreover, as shown by Class Counsel's firm resume, attached to the Declaration of E. Michelle Drake, Class Counsel are

experienced and qualified to represent the Settlement Classes in this matter. *Id. at Ex. A*. The final prerequisite of Rule 23(a) is met.

### B.     The Prerequisites of Rule 23(b) Are Met

In this case, the Settlement Classes fit within the third prong of Rule 23(b) and should be certified thereunder. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is a superior method for adjudicating the claims. "[C]ertification is appropriate when liability issues turn on common questions rather than individual states of mind or responses." *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004). The class must be "sufficiently cohesive to warrant" class adjudication. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). The class action must also be "superior to other available methods for the fair and efficient adjudication of the controversy." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). In other words, to meet the requirements of  Rule 23(b)(3), "[c]ommon questions must predominate over any questions affecting only individual members . . . [such that] a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701 (4th Cir. 2011) (citing *Amchem Prods.*, 521 U.S. at 615). Furthermore, in the context of a settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620 (citations omitted).

The central issues in this litigation are common among Settlement Class members, and the elements of Plaintiffs' claims could be shown through common evidence. All of the Settlement Class members of the Applicant Class completed Defendant's standard BIIC, which

allegedly violated the FCRA because it contained a liability release and was buried in the application documents. *See Amended Compl.* ¶¶ *22–28*. The members of the Multiple MVR Check Class have claims based on the same alleged failure to obtain FCRA-compliant disclosures and consent forms prior to procuring a consumer report. *See id.* Any forms signed by these Settlement Class members allegedly violated the FCRA for the same reason. *Id.* The members of the Adverse Action Class share a common question of liability: whether Defendant violated the FCRA by allegedly depriving them of their right to receive a copy of their reports prior to taking adverse employment action. *See id. at* ¶¶ *29–32*. Finally, all Settlement Class members must prove that Defendant "willfully" violated the FCRA, *see id. at* ¶¶ *25, 28, 32*, which can be answered through homogeneous proof because Defendant allegedly systematically engaged in the conduct at issue. Furthermore, damages are common to the Settlement Classes, since the relevant provision of the FCRA would provide for uniform statutory damages among each Settlement Class, regardless of Settlement Class members' individual states of mind. 15 U.S.C.A. § 1681n (a) (1)(A); *see also Newsome*, 219 F.R.D. at 365. Thus, common questions predominate, and a class action is the most economical, efficient, and equitable method to try this case.

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Court may approve a class action settlement after evaluating its procedural and substantive fairness. Fed. R. Civ. P. 23(e); *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *1 (D. Md. Mar. 23, 2010). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). However, assuming the procedural requirements of Rule 23(e) have been met,

there is a "strong presumption in favor of finding a settlement fair." *E.g.*, *Hoffman*, 2010 WL 1176641, at *2 (quoting *Lomascolo v. Parsons Brinkerhoff, Inc.*, No. 1:08-CV-01310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).

Here, not only does the proposed Settlement meet the procedural requirements of Rule 23(e), but a review of the settlement process and the substantive terms of the Settlement will show that the rights of all Settlement Class members have been considered and that the Settlement is fair, reasonable, and adequate in all respects.  In fact, in light of other, similar FCRA settlements, the Settlement is extremely favorable to the Settlement Classes. Accordingly, the Court should grant final approval of the Settlement.

### A.     The Procedural Requirements of Rule 23(e) Have Been Met

Rule 23(e) lays out the procedural requirements for approving a class action settlement, which have been met in this case.  Rule 23(e), in relevant part, requires that the court (1) direct reasonable notice to all class members that could be bound by the settlement; (2) hold a hearing to determine the fairness, reasonableness, and adequacy of the settlement; (3) have on file the parties' statement specifying their agreement; and (4) provide an opportunity for class members to object to and opt out of the settlement.  Fed. R. Civ. Pro. 23(3); *Hoffman*, 2010 WL 1176641, at *1, *1 n.4.

The settlement process in this case meets every requirement of Rule 23(e).  Defendant has provided the Settlement Administrator with the Settlement Class members' identities, and the Court-approved Notice has been distributed to any employees and applicants in Defendant's records that fall within the definitions of the Settlement Classes.  *Settlement Admin. Decl. ¶ 10*. The Notice in the form of the two-sided postcard was short and easy to read, and the long-form Notice provided thorough details of the Settlement terms, Settlement Class members' rights, and

the deadlines to file claims, opt out, or exclude themselves. *ECF No. 71-1, 71-2.* The Notices also directed Settlement Class members to the Settlement Website and a toll-free number where they could obtain additional information. *Id.* As the Court noted in its preliminary approval Order, the Notices were "the best notice practicable under the circumstances" and "constitutes due and sufficient notice of this Settlement to all persons affected by . . . the Settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c) (2) and Due Process." *ECF No. 69 ¶ 8.*

The parties have filed a thoroughly detailed, finalized Settlement Agreement with the Court, *ECF No. 67-1*, and have posted the Agreement on the Settlement Website. All interested parties have had the opportunity to exclude themselves or file objections and appear at the fairness hearing to raise their concerns. Yet not a single person has chosen to object. *Settlement Admin. Decl. ¶ 17; Drake Decl. ¶ 12; See generally Singleton, et al. v. Domino's Pizza, LLC*, No. 8:11-CV-01823 (D. Md. Jul 01, 2011), *Court Docket* (showing no objections filed). Thus, the procedural requirements for class action settlements have been fulfilled in every respect.

**B.      The Settlement Is Substantively Fair and Adequate**

Once the Court determines that the procedures of Rule 23(e) have been followed, it may turn to the substantive fairness of the Settlement. In this case, the terms of the Settlement are fair, reasonable, and adequate to provide appropriate relief to the proposed Settlement Classes.

When evaluating the fairness of the Settlement, the Court may consider: (1) the level of discovery conducted and the posture of the case at the time the parties settled; (2) the circumstances surrounding the negotiations and any evidence of collusion between the parties; and (3) the experience of Class Counsel and its opinion as to the fairness of the Settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975); *In re Mid-Atl. Toyota Antitrust*

*Litig.*, 564 F. Supp. 1379, 1383–84 (D. Md. 1983); *Hoffman*, 2010 WL 1176641, at *2 n.5.  To determine whether the Settlement is adequate, the Court may consider: (1) the strength of the merits of the case and probability for success compared to the relief provided in the Settlement; (2) the potential expense and duration of continued litigation; (3) the opinions of Settlement Class members and extent of opposition to the Settlement; and (4) Defendant's solvency and the likelihood of recovery on a judgment.  *See Flinn*, 528 F.2d 1169, 1172–73 (4th Cir. 1975); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. at 1383–84; *Hoffman*, 2010 WL 1176641, at *2 n.5.  In this case, as there is no evidence that Defendant would be unable to pay a judgment, only the first six factors are relevant.

Analyzing these factors will show that the exceptional outcome laid out in the proposed Settlement is eminently fair, reasonable, and adequate.  The case has reached a stage where settlement is appropriate.  The parties conducted arms-length settlement negotiations without collusion, and Class Counsel has an excellent reputation and significant experience litigating these types of claims.  The relative strength of Plaintiffs' claims on the merits, compared to Defendant's potential defenses, supports the adequacy of the Settlement.  Each Settlement Class member will receive a check for a substantial amount—considerably more than the minimum statutory damages and the amount class members have recovered in many other, similar settlements.  Yet if the parties were to continue litigating the case, it would likely involve extended discovery, a difficult and time-consuming battle over the question of Defendant's willfulness, the possibility of no recovery whatsoever, and, even if Plaintiffs were to prevail, the prospect of class members recovering less through litigation than they will receive through this Settlement.  In light of the foregoing reasons, the instant Settlement achieves an excellent result that is fundamentally fair to the Settlement Classes, and the Court should grant final approval.

1.      *The Parties Have Engaged in Thorough Discovery, and the Case Is Ripe for Settlement*

The timing of the Settlement supports a finding of fairness.  When a settlement is reached at a point when litigation is advanced, this "militates strongly in favor of the settlement." *Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 18 F. Supp. 2d 569, 579 (D. Md. 1998).  All parties should have "sufficient information about their claims and defenses at the time they began exploring the possibility of settlement." *Edelen,* 2013 WL 3816986, at *8.  The level of discovery conducted should ensure that the parties have developed the facts enough to accurately assess the case's merits.  *In re Tyson Foods, Inc.*, No. CIV.A. RDB-08-1982, 2010 WL 1924012 (D. Md. May 11, 2010).  However, where the fact pattern of a case is straightforward, the parties need not engage in "burdensome, expensive discovery" in order to adequately develop the record and evaluate the merits of the claims.  *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011).

The parties in this case have engaged in sufficient discovery and motion practice to determine the merits of the Plaintiffs' Complaint and the likelihood of success.  At the time this Settlement was reached, the parties had litigated this action for more than a year and half, had exchanged discovery requests and formal responses.  In preparation for mediation, Defendant produced and Plaintiffs reviewed hundreds of pages of relevant documents, including documents describing Defendant's procedures, its contract materials with HireRight, a sample of pre-adverse action letters from throughout the class period, sample consumer reports, and Defendant's insurance contract and correspondence with its carrier.  The documents also included tabular data regarding the number and circumstances of class members, as well as letters from counsel explaining Defendant's case investigation and anticipated testimony of witnesses. *Drake Decl. ¶ 2.*

18

The parties also exchanged lengthy formal mediation briefs setting forth their views on the merits of Plaintiffs' case, including the parties' respective positions on class certification, the merits, and damages. *Drake Decl. ¶ 3.* Because there was little dispute over how the core facts involved in this case would develop through the course of additional discovery, much of the litigation efforts were channeled into legal research and briefing on Defendant's motions to dismiss, and the parties' subsequent evaluation of the strength of Plaintiffs' bid for certification, Plaintiffs' claims of willfulness, and the appropriate measure for statutory damages. *Id.* at *¶ 2.* Once the Court denied dismissal of the case and the parties entered into formal mediated settlement discussions, both sides had attained a firm understanding of the basic factual and legal issues. Thus, the timing of the instant Settlement is fair and appropriate in the circumstances of this case.

2.      *Class Counsel Vigorously Represented the Interests of Plaintiffs and Engaged in Arms-Length Negotiations to Reach the Instant Settlement*

A review of the circumstances surrounding this Settlement reveals that there was no collusion or bad faith involved.  "[T]he court is obligated to ascertain that the settlement was reached as a result of good-faith bargaining at arm's length."  *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. at 1383.  The parties' good faith may be reflected in factors such as the circumstances surrounding the negotiations, the posture of the case, *id. at 1384*, and "the character and sophistication of the attorneys involved," *In re Serzone Products Liab. Litig.*, 231 F.R.D. 221, 242 (S.D. W. Va. 2005).

Here, the circumstances surrounding the settlement negotiations help demonstrate the fairness of this Settlement.  Both sides of this dispute zealously represented their clients' interests.  The parties entered mediation after the Court denied Defendant's motion to dismiss, Plaintiffs moved to certify a class, and the Court stayed the case pending the outcome of

19

settlement discussions.  *Drake Decl. ¶¶ 4-6.*   Negotiations were overseen by a third-party neutral—mediator Jerry Roscoe of JAMS.  *Id. at ¶ 4.*   The initial discussions lasted a full day before the parties reached a written agreement on core terms of the Settlement.  *Id. at ¶ 4.*   The parties then sought several extensions of the stay to provide ample time to hash out the details of the agreement.  *ECF Nos. 53, 55, 57, 59*; *Drake Decl. ¶ 6.*   Settlement negotiations were vigorous, and, as the quality and extent of briefing over Defendant's motions to dismiss shows, this action was hard-fought on both sides.  *See Drake Decl. ¶ 7*; *ECF Nos. 15, 22, 23, 24.*   This is not a case where Class Counsel negotiated a gross amount for the class, a percentage for unopposed fees, and then allowed Defendant to dictate all remaining settlement terms.  Instead, even after the monetary terms of the Settlement were decided, the parties continued to vigorously negotiate all aspects of the settlement, from the language to be included in the notices to the content of the IVR script that Settlement Class members would hear when they contacted the Administrator.  *Drake Decl. ¶ 7.*   As discussed in more detail below, the character and sophistication of Class Counsel also supports a finding of fairness.  *Infra. at II.B.3.*   Thus, the nature and length of negotiations and other circumstances surrounding the Settlement help demonstrate that the compromise reached is fair to Plaintiffs and to absent Settlement Class members.

> 3.   *Class Counsel Has Substantial Experience Litigating Similar Actions and Believes the Settlement Constitutes an Excellent Outcome for the Settlement Classes*

Class Counsel's experience and reputation in litigating consumer class actions weighs in favor of a finding of fairness.  The Court should consider Class Counsel's experience in the relevant field as a factor relevant to fairness of the Settlement.  *See In re Jiffy Lube Sec Litig.*, 927 F.2d at 159.  When the Settlement Classes are represented by experienced and skillful

attorneys, the Court should give some weight to the opinion and recommendation of Class Counsel in assessing the fairness of the Settlement terms to Plaintiffs and absent Settlement Class members. *Flinn*, 528 F.2d at 1173.

Class Counsel is experienced in litigating consumer class actions and, in particular, FCRA cases. *Drake Decl. at Ex. A*. Michelle Drake is a graduate of Harvard Law and has more than a decade of litigation experience. *Id.*. She has led the Consumer Class Action group at Nichols Kaster to achieve several multi-million dollar class victories and is currently lead counsel on numerous cases involving violations of the Fair Credit Reporting Act. *Id.* In addition to this action, Nichols Kaster currently serves as counsel of record in approximately five other putative class action lawsuits relating to violations of the Fair Credit Reporting Act, including: *Rubio-Delgado v. Aerotek, Inc.*, No. 4:13-CV-3-03105 (N.D. Cal. July 3, 2013); *Schumpert v. Aldi, Inc.*, No. 1:13-cv-02417 (N.D. Ill. April 1, 2013); *Watkins v. Hireright, Inc.*, No. 3:13-CV-01432 (S.D. Cal. June 19, 2013); *Ernst v. Dish Network, LLC et al.*, No. 1:12-CV-08794 (S.D.N.Y. Dec. 4, 2012); and *Regalado v. Ryder Integrated Logistics, Inc.*, No. 2:12-CV-05737 (C.D. Cal. July 2, 2012).   In addition, Ms. Drake has been appointed as Class Counsel in numerous cases involving employment related matters. *See e.g., Luiken v. Domino's Pizza, LLC*, No. 09-516, 2010 WL 2545875 (D. Minn. June 21, 2010); *Clincy v. Galardi South Enterprises, Inc.*, No. 09-2082, 2010 WL 966639 (N.D. Ga. Mar. 12, 2010); *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-3043 (S.D.N.Y. Dec. 17, 2009) (granting FLSA conditional certification) and 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010) (granting Rule 23 class certification).   After assessing this case in light of its significant experience with FCRA, and other consumer-protection and employment litigation, Class Counsel believes the Settlement is fair and adequate in all respects. *Drake Decl. ¶ 11.*

4. *Weighing the Strength of Plaintiffs' Case with the Settlement Terms Reveals the Adequacy of the Settlement*

The strength of the merits of these claims and Plaintiffs' probability of success reveal the fundamental adequacy of the Settlement terms. When evaluating the adequacy of a settlement, the Court may consider the "relative strength of the plaintiffs' case on the merits" and "the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. While the Court need not resolve any disputed issues of law or fact, it may consider whether the case presents "sharp differences of viewpoint" on the core issues. *Vaughns*, 18 F. Supp. at 579. "Essentially, the court should weigh the benefits of the settlement to the class against the strength of the defense . . . ." *Domonoske*, 790 F. Supp. 2d at 474.

From the time the Complaint was filed, Plaintiffs' likelihood of success on the merits of this case was uncertain. *Drake Decl. ¶ 14*. First, the legal propriety under the FCRA of Defendant including a liability release on its BIIC is subject to debate. There is no controlling case law on the subject that would inform this dispute. *ECF No. 25, at 22* ("The parties have not identified, and the court is not aware of, any case law addressing whether an employer may lawfully include a liability release 'in the document consist[ing] solely of the disclosure' that informs an employee about procurement of a consumer report for employment purposes.").

Furthermore, because the FCRA is not a strict liability statute, the ultimate success of Plaintiffs' claims depended on showing that Defendant *willfully* violated the FCRA. *See* 15 U.S.C. §§ 1681n–o. As other district courts in this Circuit have explained, proving willfulness is "an onerous task with a highly uncertain outcome." *Domonoske*, 790 F. Supp. 2d at 474. While negligent conduct can run afoul of the FCRA, unless Plaintiffs can prove FCRA violations were truly "willful," they can only recover actual damages. 15 U.S.C. §§ 1681n(a)(1).

If, on the other hand, judgment was entered in favor of Plaintiffs, and the fact-finder determined that Defendant had willfully violated the FCRA, the amount of damages would be somewhat uncertain.  *See Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 416 (E.D. Pa. 2010) ("The determination of damages in a [FCRA case]—like the determination of liability—is a complicated and uncertain process, often involving conflicting opinions.").  There is a good possibility each Settlement Class member would only receive the statutory minimum of $100.  15 U.S.C. § 1681n(a)(1)(A).  However, as some might describe the liability release in Defendant's disclosure as a "technical" violation of the FCRA, there is also a risk that the Court would award even *less* than the minimum statutory damages.  *Klingensmith v. Max & Erma's Restaurants, Inc.*, CIV.A. 07-0318, 2007 WL 3118505, at *5 (W.D. Pa. Oct. 23, 2007) ("Were a jury to award even the minimum requisite statutory damages for Defendant's technical violations, i.e., $100 . . . the Courts might well conclude remitter/reduction appropriate.").  While Plaintiffs would consider such a result to be inconsistent with the law, the risks of such an outcome, and attendant appeals, are nonetheless real.

Compared to other FCRA cases, this Settlement provides Settlement Class members with a remarkable monetary recovery.  Many other FCRA cases that have settled on a claims-made basis provided significantly less value per class member—usually well below the $100 statutory minimum for damages.  *See, e.g.*, *Final Order*, *Domonoske v. Bank of America, N.A.*, 5:08-CV-00066, ECF No. 155 at 5, 14-15 (W.D. Va. June 14, 2011) (settling for about $17 per class member who files a claim); *Settlement Agreement*, *Ori v. Fifth Third Bank*, No. 2:08-CV-00432, ECF No. 217 at ¶ 9 (settling for $55 per class member who files a claim); *Stipulation and Agreement of Settlement*, *LaValle v. Chexsystems*, No. 8:08-CV-01383, ECF No. 58 at ¶ 3.2 (C.D. Cal. Oct. 5, 2011) (settling for $82 per class member who files a claim).  Relative to other

FCRA settlements, the instant Settlement secures more value for the Settlement Class members. *See, e.g.*, *Settlement Agreement*, *Phillips v. Accredited Home Lenders Holding Co.*, No. 2:06-CV-00057, ECF No. 35-2 at ¶¶ 1.13, 5.1 (C.D. Cal. July 17, 2008) (settling for $10 per class member on claims-made basis, with fees and costs paid separately); *Final Judgment and Order of Dismissal with Prejudice*, *In re Farmers Insurance Co., Inc.*, 5:03-CV-00158, ECF No. 1011 at ¶ 6 (W.D. Ok. Sept. 29, 2011) (settling for $35 per class member on claims-made basis, with fees and costs paid separately).   Furthermore, unlike many FCRA settlements, here the settlement value will be distributed to the Settlement Class members through direct monetary payments, and not through the provision of coupons or other non-monetary relief.  *See, e.g.*, *Stipulation of Settlement*, *Anderson v. Signix, Inc.*, No. 3:08-CV-00570, ECF No. 39-1 at ¶ 2.4 (settling the large majority of class members' claims for one $52 coupon per member); *Klingensmith*, 2007 WL 3118505, at *5 (settling for two $4 restaurant vouchers per FCRA violation); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 246 (E.D. Penn. 2011) (settling for one $20 coupon per FCRA violation).

At a minimum post-fees and deductions settlement value of $107.61 per Settlement Class member, the instant Settlement secures Settlement Class members meaningful monetary relief that is far superior to most other similar FCRA settlements.  Moreover, because this Settlement allows Settlement Class members to make claims in all groups of which they are a member, the minimum possible post-fees and deductions average per Settlement Class member recovery in this case of $243.78 is particularly impressive.  Whether viewed on a per-claim basis or on a per-class member basis, even after deductions for Court-approved fees, expenses, and awards, all Settlement Class members will receive more than the minimum statutory damages.  *See* 15 U.S.C. § 1681n(a)(1)(A) (setting statutory damages between $100 and $1000); *Settlement*

*Admin. Decl. ¶¶ 20, 21.*   After weighing the risks of continued litigation with the terms of the Settlement, Class Counsel believes this Settlement is the most beneficial outcome for the Settlement Classes.   *Drake Decl. ¶ 11.*   The Settlement is not only adequate; it represents an exceptional recovery for the Settlement Classes in all respects.

5.     *Protracted Litigation Would Be Costly and Harmful to the Settlement Classes*

Here, further litigation could delay payment for years and entail substantial additional expenses.   "[T]he Court must consider . . . the complexity, expense, and likely duration of additional litigation."   *Vaughns*, 18 F. Supp. 2d at 579.   Policy considerations encourage the conservation of court resources, and in general avoiding "unnecessary and unwarranted expenditure of resources and time benefit[s] all parties."   *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009).

If this Settlement was not approved, Plaintiffs' claims would likely need to progress through several more phases of litigation before any judgment was reached.   Thus far the parties have briefed the motions to dismiss and engaged in much of the discovery needed to pursue this case, but moving forward they would need to address at least some additional discovery, class certification briefing, and summary judgment motions before taking these claims to trial.   The attorneys' zealous representation of their clients to date ensures that, absent settlement, this dispute would be vigorously litigated to the end.   Furthermore, as previously explained, "[Plaintiffs] would have to prove willfulness at trial, a high hurdle to clear."   *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 212 (E.D. Pa. 2011).   This process would be time-consuming, involve substantial litigation costs, and ensure significant delays before Settlement Class members received payment.   Moreover, even after prevailing at trial, Plaintiffs would be faced with inevitable appeals.   This weighs in favor of settlement approval.

6.     *The Settlement Classes Have Reacted Favorably to the Settlement*

"The almost complete absence of opposition to the settlements also supports a finding of adequacy in this case." *In re Mid-Atl. Toyota Antitrust Litig.*, 605 F. Supp. 440, 444 (D. Md. 1984). The degree of opposition to a settlement is an important factor to consider in determining whether to approve a settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. Some courts have said "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)). The Court may consider the amount of claims filed, the number of Settlement Class members who opted out, and any meritorious objections to the Settlement terms. *See In re Tyson Foods, Inc.*, 2010 WL 1924012, at *3 (finding these factors persuasive and approving a settlement).

While more than 45,000 Notices have been mailed, not a single person has objected to the Settlement in any respect. This should "give[] the Court a great deal of confidence in the settlements [sic] adequacy." *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 258. Furthermore, only seven persons chose to opt out of the Settlement—a small number for a FCRA settlement. *See Chakejian*, 275 F.R.D. at 212 ("Seven opt outs and two objectors in a class of nearly forty thousand represents a small number that weighs in favor of this [FCRA] settlement."). The nearly 15% claims rate, which results in the full distribution of the settlement fund, also supports the adequacy of the Settlement. This response rate is relatively high compared to other claims-made class action settlements where data is available, and this approval process is also rare in that Counsel have elected to provide detailed information to the Court regarding the number and quantity of claims made, as well as regarding the expected

payouts, both pre- and post- payment of all requested deductions.  Nicholas M. Pace and William B. Rubenstein, *How Transparent are Class Action Outcomes: Empirical Research on the Availability of Class Action Claims Data*, (RAND Institute for Civil Justice Working Paper No. WR-599-ICJ, July 2008) (*attached as Exhibit C to the Drake Decl.*).  Moreover, to the extent the form of notice can influence the claims rate, the claims process here, developed after Class Counsel consulted with settlement administrators, is as non-burdensome as possible.  Notice was sent via postcard so it could not be discarded without a glance as junk mail, the claim form was tear-off with postage pre-paid, and Settlement Class members were not required to submit any documentation in order to make a claim.  *Drake Decl. ¶ 9.*  Overall, the response to the Settlement indicates that Settlement Class members are satisfied with their recovery, and the Settlement should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the proposed Settlement and (1) certify the Settlement Classes, (2) finally approve the Amended Class Action Settlement Agreement; (3) dismiss all of the Settling Plaintiffs' and Settlement Class members' claims with prejudice; and (4) dismiss without prejudice the claims of the seven individuals who opted out of this Settlement.


Dated:  September 16, 2013          /s/E. Michelle Drake
                                       Kai H. Richter (*pro hac vice*)
                                       Rebekah L. Bailey (*pro hac vice*)
                                       E. Michelle Drake (*pro hac vice*)
                                       Paul J. Lukas (*pro hac vice*)
                                       Anna P. Prakash (*pro hac vice*)
                                       NICHOLS KASTER, PLLP
                                       4600 IDS Center
                                       80 South 8th Street
                                       Minneapolis, MN  55402

Telephone:  612.256.3200
Fax:  612.338.4878

/s/Alane Tempchin
Alane Tempchin (Bar No. 14780)
SULLIVAN, TALBOTT & BATT
77 South Washington Street, Suite 304
Rockville, MD 20850
Telephone: 301.340.2450
Fax: 301.424.8280

**ATTORNEYS FOR PLAINTIFFS**