# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ADRIAN SINGLETON, et al.       Case No.: 8:11-cv-01823-DKC

  Plaintiffs,

              **DECLARATION OF E. MICHELLE DRAKE**

vs.

DOMINO'S PIZZA LLC,
  Defendant.

I, E. Michelle Drake, declare the following:

  1.  I am one of the attorneys representing Named Plaintiffs Adrian Singleton and Justin D'Heilly in the above-captioned action.  I submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Proposed Class Action Settlement and in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards.

  2.  Before mediation the parties had exchanged initial disclosures; participated in a Rule 16 conference with the Court; Plaintiffs had served interrogatories and requests for production on Defendant and Defendant had served the same on Plaintiffs; Defendant had responded to Plaintiffs' interrogatories and requests for production and had produced more than 600 pages of documents, which Plaintiffs reviewed; the parties had fully briefed a motion to dismiss; corresponded in detail regarding data and issues prior to mediation; and exchanged detailed mediation briefs setting forth each party's respective view of the facts, the law, the risks faced by the other party in the litigation, and the value of the claims involved in this litigation. Throughout this process, Plaintiffs were provided with a sample of pre-adverse action letters from throughout the class period, sample consumer reports, Defendant's insurance contract and

certain correspondence with its carrier, tabular data regarding the number and circumstances of class members, and correspondence from counsel detailing Defendant's case investigation and anticipated testimony of witnesses. Much of our litigation efforts were channeled into legal research and briefing on Defendant's motions to dismiss, and the parties' subsequent evaluation of the strength of Plaintiffs' bid for certification, Plaintiffs' claims of willfulness, and the appropriate measure for statutory damages.

3. In the weeks leading up to mediation, the parties also exchanged lengthy formal mediation briefs setting forth their views on the merits of Plaintiffs' case, including the parties' respective positions on class certification, the merits, and damages.

4. The parties engaged in a full-day mediation with third party neutral Jerry Roscoe of JAMS on September 24, 2012.

5. After mediation, the parties exchanged numerous drafts of both a terms sheet memorializing the parties' agreement and of the formal settlement agreement and associated documents.

6. The parties sought several extensions of the stay to provide ample time to hash out the details of the agreement.

7. Negotiations during and after mediation were vigorous and hard-fought on both sides. During the course of these negotiations, the parties exchanged approximately 100 emails, 8 drafts of the terms sheet, 9 drafts of the settlement agreement, 11 drafts of the notice documents, and participated in numerous phone calls regarding the settlement terms.

8. During the settlement notice period, Class Counsel fielded approximately 53 phone inquiries regarding the Settlement.

9. Prior to and after mediation, I consulted with numerous claims administrators on the questions of how to design claims processes to yield claims rates that are as high as possible. Based on my conversations, it is my understanding that, to the extent the form of notice and the method by which claims can be made can affect the claims rate, double-sided postcard notice with business reply postage is among the most effective means of direct mail notice that can be utilized. In my experience, many factors must be considered in deciding on the form of notice and the method for making claims in any given case (such as cost, the need for information and/or documentation from class members, the nature of the relationship between class members and the defendant, the value of the potential recoveries and the administrative expenses associated with the claims process, the nature of the claims at issue, and the method by which class members normally interact with the defendant). It is my sincere professional judgment that the claims process utilized in this case was the most appropriate method to be utilized in light of all of these factors.

10. In seeking a settlement administrator to handle the notice and claims process in this matter, Counsel sought competitive bids from two reputable settlement administrators in this matter and selected the cheaper of the two options, KCC Consultants.

11. After assessing this case in light of my, and the firm's, significant experience with the FCRA and other consumer-protection litigation, I believe the settlement is fair and adequate in all respects.

12. I have not received any objections to the settlement to date.

13. We have expended many hours and advanced significant costs to litigate and settle this matter. In particular, we: (1) personally interviewed and consulted with the Named Plaintiffs prior to filing the Complaint and the Amended Complaint, (2) engaged in extensive

investigation of the claims before deciding to file this case; (3) drafted and amended the Complaint; (4) retained and conferred with local counsel; (5) drafted memoranda in opposition to Defendant's motions to dismiss; (6) drafted and served discovery requests; (7) reviewed documents produced by Defendant; (8) performed damage calculations; (9) conferred informally with Defendant regarding pre-mediation discovery; (10) prepared papers necessary to move for class certification; (11) prepared for and traveled to Washington, D.C. to attend a day long mediation; (12) negotiated a comprehensive class action Settlement; (13) drafted and filed a motion for preliminary approval of the Settlement and presented the Settlement to the Court at a hearing for preliminary approval; (14) negotiated amendments to the Agreement and class notices to ensure greater clarity; (15) oversaw the administration and distribution of settlement notice to the Settlement Classes; (16) fielded inquiries from Settlement Class members; (17) drafted and filed the instant motion for attorneys' fees, costs, and class representative incentive awards; and (18) drafted and filed a motion for final approval of the Settlement.

14. Class Counsel took this case on a contingency basis and thus has not been reimbursed for any time or expenses to date. We negotiated with Plaintiffs a contingency fee of one third of any recovery, with the understanding that this amount was an appropriate incentive for us to take on the financial risks involved in the litigation, and that we would receive reimbursement for costs and fees in addition to that amount from the value of a successful settlement or judgment. This is typical of the percentages awarded to our firm in other cases.

15. To date, our lodestar is approximately $200,136, and our costs are approximately $13,339.84. Additional fees and costs are expected to be expended following final approval during the check process to Class Members.

16. Our lodestar is based on the hourly rates our firm charges in non-contingent hourly fee based representation and the rates sought are consistent with lodestar based awards that have been approved by other courts. While the vast majority of Class Counsel's work is on a contingent fee basis, Class Counsel performs hourly retained work on occasion, for both litigation related matters and consulting matters, such as severance package review and consultation. These rates constitute our firm's standard billable rates based on position and experience.

17. All travel for this case was conducted in coach and the hotel fees are less than $350.00 per night.

18. The Named Plaintiffs have remained engaged in this litigation and have fulfilled their responsibilities to zealously and adequately represent the Classes.

19. For each Named Plaintiff, this lawsuit appears on the first page of Google's search results when you search their names.

20. Although this case was settled as a common fund settlement, settlement negotiations surrounding attorneys' fees happened only after the gross amount of the fund had already been negotiated. The specific percentage that Class Counsel would seek in attorneys' fees was negotiated only after the gross amount of the common fund was negotiated and agreed upon. At all times Class Counsel was willing to petition the Court for fees as a percentage of the common fund over Defendant's objection. This process ensured that there would be no trade-off between the gross recovery amount and the percentage of fees to which Defendant would agree without objection.

21. Since the end of the claims period, the Settlement Administrator has been working to finalize the list of claimants. In a small number of instances, discrepancies between

the information on the claim forms and the information on the class list has required additional research to confirm eligibility to participate in the Settlement. We anticipate this information will be finalized before the final approval hearing. On or before that date, we intend to submit a revised declaration from the Settlement Administrator explaining any changes to the number of claims deemed eligible and providing revised calculations to the Court. We anticipate that any such changes will be de minimus.

22. Attached as **Exhibit A** is Nichols Kaster, PLLP's Firm Resume.

23. Attached as **Exhibit B-1** is a summary of timekeepers in this matter, **Exhibit B-2** are subtotals by litigation category, and **Exhibit B-3** are Nichols Kaster's line item fee and costs records for this matter. Time entries presented to the Court were exported from the timekeeping software Nichols Kaster uses to record time. The original time entries were redacted in order to preserve attorney-client and work product privileges, and some were edited for clarity, i.e., in order to expand commonly used abbreviations within our firm, such as changing "OC" to "opposing counsel," etc. Should the Court wish to review original, unedited, and un-redacted entries, Counsel is prepared to make them available.

24. Attached as **Exhibit C** is Nicholas M. Pace and William B. Rubenstein, *How Transparent are Class Action Outcomes: Empirical Research on the Availability of Class Action Claims Data*, (RAND Institute for Civil Justice Working Paper No. WR-599-ICJ, July 2008).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 16, 2013         /s/ E. Michelle Drake
                                  E. Michelle Drake